**UNITED STATES of America**
**v.**
**Louis W. GAINES, Appellant.**
**No. 23369.**

United States Court of Appeals,
District of Columbia Circuit.

Argued May 25, 1970.

Decided Aug. 27, 1970.

Mr. Melvin M. Feldman (appointed by this Court), with whom Mr. Eugene J. Fitzpatrick, Rockville, Md., was on the brief, for appellant.

Mr. Warren R. King, Asst. U. S. Atty., with whom Messrs. Thomas A. Flannery, U. S. Atty., John A. Terry and Albert W. Overby, Jr., Asst. U. S. Attys. at the time the brief was filed, were on the brief, for appellee.

Before TAMM, LEVENTHAL, and MacKINNON, Circuit Judges.

TAMM, Circuit Judge:

The appellant was arrested for selling five capsules of heroin to an undercover policeman and was indicted in three counts for violation of the Federal Narcotic Laws (21 U.S.C. § 174, 26 U.S.C. §§ 4704(a) and 4705(a) (1964)); he was convicted and sentenced to a ten year prison term. Recent decisions of the Supreme Court and of this court have disposed of the bulk of appellant's arguments and have made prolonged discussion by us unnecessary. We affirm the conviction but remand to the trial court for resentencing consistent with the provisions of the Narcotic Addict Rehabilitation Act of 1966 (18 U.S.C. §§ 4251–55) (Supp. IV 1965–1968) as described in detail by this court, in Watson v. United States, No. 21,186 (D.C.Cir. July 15, 1970) (en banc).

The sale of heroin took place on June 4, 1968 but it was not until August 25th, shortly after the purchasing officer gave up his cover, that a warrant issued for the appellant's arrest. In the meantime, the officer had learned the appellant's name on June 10th when he was shown a group of police department identification photographs out of which he selected a picture of the appellant Gaines. Although he had not known Gaines' name until that point, the officer had seen and talked with him "on numerous occasions", "both before and after the sale on June 4, 1968." (Tr. 34.)

At the trial appellant's defenses were mistaken identification and, alternatively, insanity; in connection with the

latter, it was established that appellant had been in and out of mental institutions over the course of twenty years and that during this period he had become a narcotics addict. (Tr. 14–15, 31, 105 *et seq.*)

The prosecution and the defense each offered psychiatric testimony directed to the question whether appellant was suffering from a mental disease or defect at the time of the sale and, if he were, whether the sale was a product of that disease. The jury evidently reached a negative conclusion on one or both of these points. At the time of sentencing no mention was made by court or counsel that the appellant was potentially eligible for treatment under the Narcotic Addict Rehabilitation Act of 1966; without elaborating on the reasons for her decision, the trial judge sentenced appellant to a ten year prison term, presumably on the authority of sections 21 U.S.C. § 174, 26 U.S.C. §§ 4704(a), 7237(b) and (d) (1964).

For the most part appellant's arguments follow a well-trodden path along which we are seasoned travelers. Recent decisions of the Supreme Court and of this court, however, have confirmed the constitutionality of the statutes appellant attacks, at least when the evidence establishes a sale of narcotics rather than mere possession and when the narcotic sold is heroin. Turner v. United States, 396 U.S. 398, 90 S.Ct. 642, 24 L.Ed.2d 610 (1970) and Watson v. United States, No. 21,186 (D.C.Cir. July 15, 1970) (en banc). Since nothing in this record inclines us to a different view, we think no useful purpose would be served by further discussion of the constitutional objections appellant raises.

Nevertheless, two aspects of the proceedings leading up to the appellant's conviction are troublesome enough to merit brief mention. The first is the apparent failure of the police to obtain a formal identification of appellant for over a year, the period which elapsed between the offense and the start of the trial. From his arrest in August of 1968 to his trial in June of the following year, appellant was continuously in custody, either at St. Elizabeth's or the D. C. Jail, but there is nothing in the record to indicate that the undercover officer ever made a formal, in-person identification of the appellant during the entire period. All we have is the officer's in-court identification coupled with a photographic identification made several days after the offense.

What could the police have done after a year of imprisoning the appellant, identified merely through a photograph, if he had not been the man from whom the heroin was obtained? Whatever the atonement, certainly it could never be sufficiently effective to relieve the police from the responsibility of ensuring at the earliest possible time that they have the right man. Surely bringing the police officer to view the apprehended suspect would not overburden the police department. After all, once a narcotics purchase is made and laboratory tests are run, there is little else for the police to do in order to make their case except to establish that the man they have charged with the sale is the man who made it. When faced with this single element of uncertainty the police should be able to take great pains, in all events greater than those taken in this case, to make sure that no mistaken identification has occurred.

The risk of mistake is not minimal: even assuming that an undercover officer is thoroughly familiar with the person of a trafficker, as seems to be the fact here, it is not inconceivable that the officer would not be as accurate in examining a group of pictures and picking from them one that represents the man he knows. The arrest warrant in this case was issued for a man whose picture resembled the trafficker and it was not until a year later that the officer verified the accuracy of this resemblance by a personal confrontation with the appellant. In the future, in order that no mistake occurs to the prejudice of an innocent man whose only crime is that his picture looks like a narcotics traffic-

ker, it would be better if the police conduct a formal, in-person, untainted identification as soon after an accused's apprehension as is practicable in light of the realities of undercover operations and the like.

 Despite our concern that the identification procedure followed here is fraught with danger and despite our belief that it should be revised, we are not persuaded that it prejudiced this appellant. The undercover officer made a positive, in-court identification of the appellant and further buttressed the identification with his testimony that he had seen the appellant a number of times both before and after the alleged sale. A reasonable conclusion is that he had accurately selected the appellant's picture.

 It is true that appellant's counsel, when informed of the photographic identification, requested a hearing outside the presence of the jury to determine whether that procedure had tainted the in-court identification; the trial court refused this request but invited counsel to pursue the matter in the jury's presence and offered to dismiss the case should the identification appear tainted. We disapprove the trial court's decision to proceed in this fashion, but we nevertheless must reject the appellant's contention that fatal error occurred. A realistic view of the evidence which was presented convinces us that "there was * * * little chance that the procedure utilized led to misidentification of [appellant]." Simmons v. United States, 390 U.S. 377, 385, 88 S.Ct. 967, 972, 19 L.Ed.2d 1247 (1968). It is well established that a pragmatic approach is the proper course to follow in cases of this nature. The Supreme Court pointed this out in the above-cited case:

> [E]ach case must be considered on its own facts, and * * * convictions based on eyewitness identification at

trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.

Simmons v. United States, 390 U.S. 377, 384, 88 S.Ct. 967, 971. We do not deem it necessary to elaborate further on the identification problem in view of recent comprehensive treatment of that topic by this circuit in Clemons v. United States, 133 U.S.App.D.C. 27, 408 F.2d 1230 (1968) (en banc), cert denied, 394 U.S. 964, 89 S.Ct. 1318, 22 L.Ed.2d 567 (1969) and United States v. Hamilton, 137 U.S.App.D.C. 89, 420 F.2d 1292 (1969).[1]

Appellant additionally assigns as error the trial court's allowance of a question put to the defense psychiatrist by the prosecutor over defense counsel's objection:

> Q. [C]an you tell us whether or not Mr. Gaines could tell the difference at [the time of the offense] between what was legal and what was illegal?
>
> \* \* \* \* \* \*
>
> A. I would guess that he did know. (Tr. 120.)

 The prosecutor should not have been allowed to induce the pychiatrist to depart from the area of his medical expertise and enter the alien field of law. Cf. Stewart v. United States, 101 U.S.App.D.C. 51, 53, 247 F.2d 42, 44 (1957). The appellant's ability to distinguish between legality and illegality was a factor not only outside the scope of the psychiatrist's competence as a medical expert but also irrelevant to the ultimate issue of the appellant's criminal responsibility for the act charged. Knowledge of the difference between a legal and an illegal act, at least under the test of criminal responsibility em-

1. We note that the warrant was a John Doe warrant; under different facts, this well might cause us to view with a more jaundiced eye the identification procedure employed.

ployed in this jurisdiction, is a factor best handled deftly, if at all, because of its inherent tendency to confuse the jury's understanding of the ultimate issue. *See* King v. United States, 125 U.S.App.D.C. 318, 332, 372 F.2d 383, 397 (1967); Blocker v. United States, 116 U.S.App.D.C. 78, 80, 320 F.2d 800, 802, cert. denied, 375 U.S. 923, 84 S.Ct. 269, 11 L.Ed.2d 167 (1963). That issue, of course, is whether the act charged was a product of a mental disease or defect suffered by the appellant at the time the offense was committed. Durham v. United States, 94 U.S.App.D.C. 228, 214 F.2d 862 (1954). *See also* McDonald v. United States, 114 U.S.App.D.C. 120, 312 F.2d 847 (1962) (en banc). Unfortunately, the trial court permitted the prosecutor to attribute unwarranted significance to the single factor of the appellant's ability to distinguish between legal and illegal acts by the simple expedient of eliciting an expert's opinion. This tactic's potential effect on the jury is sufficiently adverse, we feel, to prohibit its use in the future.

■ Reversals do not flow automatically from errors, however, and we think that this is an appropriate occasion for invoking the "harmless error" rule. Fed.R.Crim.P. 52(a). Our review of the record, particularly the rather lengthy psychiatric testimony, convinces us that the jury was adequately informed on the proper standard for determining sanity and was presented with abundant evidence from which to consider fairly the appellant's insanity defense. It would be unreasonable to assume that a single question, even when answered contrary to the appellant's best interest, was sufficient to mislead this jury into reaching a verdict it would not otherwise have reached. Since consideration of appellant's insanity defense was not substan-

tially impaired by the allowance of the question, the "harmless error" rule dictates that reversal on that ground would not be appropriate.

■ Although we affirm the appellant's conviction we are convinced that it is necessary to remand these proceedings to the trial court for resentencing in line with this court's observations in Watson v. United States, No. 21,186 (D. C. Cir. July 15, 1970) (en banc). Without our repeating what is exhaustively stated there, it should suffice to observe that this court is unable to determine whether the trial court considered the appellant to be eligible for disposition under the provisions of the Narcotic Addict Rehabilitation Act of 1966. (18 U.S.C. §§ 4251-55) (Supp. IV 1965-1968).

There certainly was ample evidence in the record that appellant was a narcotics addict; that fact should have opened the door for investigation of the possible application of the act. It may well be that consideration was given to appellant's eligibility and that he was determined not to be an "eligible offender" under one or more of the act's exclusions. Unless we have some indication of this on the record, however, it is impossible for us to conclude that, for one reason or another, appellant is not eligible for the beneficent treatment made available by Congress to certain addicts. On remand care should be taken to assure that appellant has been considered for everything to which he may be entitled under the act.

Our examination of all points raised by appellant convinces us that his conviction must be affirmed. For the reasons last discussed, the proceedings are remanded to the trial court for resentencing.