**UNITED STATES of America**

v.

**Eugene H. PINKNEY, Appellant.**

**No. 74–1846.**

United States Court of Appeals,
District of Columbia Circuit.

Argued June 9, 1975.

Decided June 29, 1976.

---

**910**

James J. Faris (appointed by this court), for appellant.

Michael A. Pace, Asst. U. S. Atty., Washington, D. C., with whom Earl J. Silbert, U. S. Atty., John A. Terry, James F. McMullin, William J. Hardy and Joseph F. McSorley, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee. Edward C. McGuire, Asst. U. S. Atty., Washington, D. C., also entered an appearance for appellee.

Before WRIGHT and ROBINSON, Circuit Judges, and C. STANLEY BLAIR,[*] United States District Judge for the District of Maryland.

Opinion for the Court filed by Circuit Judge SPOTTSWOOD W. ROBINSON, III.

SPOTTSWOOD W. ROBINSON, III, Circuit Judge:

Convicted by a jury on two counts of unlawfully distributing heroin,[1] and sentenced to imprisonment for concurrent terms of three to nine years,[2] appellant makes two contentions on appeal. One is that the District Court erred in refusing to sentence him under the provisions of the Narcotic Addict Rehabilitation Act of 1966.[3] The other is that he was not given effective assistance by counsel representing him when the sentences were imposed.[4] We affirm.

## I

After return of the jury's verdicts, the District Court received from its probation service a presentence report[5] recommending an examination to determine whether appellant was a narcotic addict and, if so, whether he could likely be rehabilitated through treatment.[6] In lieu of that course, the court, at appellant's request, ordered an examination at a Veterans Administration hospital to ascertain whether he was suitable for participation in a drug treatment program which the hospital offered to veterans. Two days later, the hospital in-

---

[*] Sitting by designation pursuant to 28 U.S.C. § 292(d) (1970).

1. See 21 U.S.C. § 841(a) (1970). Prior to trial, the District Court dismissed two additional counts of possession of the heroin with intent to distribute.

2. That sentence was separately imposed on each of the two counts on which appellant was found guilty, the terms to run concurrently with each other but consecutively to any other sentence previously imposed.

3. Pub.L. No. 89–793, 80 Stat. 1438 (1966). Relevant provisions thereof, as amended to date, are hereinafter cited as codified.

4. Not his counsel on appeal. See also note 14 *infra*.

5. By order of the District Court, the presentence report was transmitted under seal as a supplemental record on appeal. This opinion will refer only to materials in the report bearing heavily on the issues on appeal.

6. See 18 U.S.C. § 4252 (1970). The apparent basis for the recommendation was an alleged statement to the probation officer by appellant to the effect that he had acquired a $75-per-day habit "snorting" heroin. The presentence report was accompanied by a letter from a community organization advising that appellant was eligible for its rehabilitation program.

formed the court that appellant was acceptable.

Thereafter, and prior to sentencing, the Government submitted an "allocution memorandum" setting forth information which, among other things, purported to link appellant to narcotics trafficking in the District of Columbia.[7] The memorandum spoke of appellant's "criminal involvement in the narcotics underworld,"[8] and depicted him as a "functionary"[9] and "trustee"[10] in a local drug-distribution network.[11] The memorandum asserted that these facts, together with others developed at appellant's trial,[12] warranted imposition of the maximum statutory penalty.[13]

At the sentencing session, appellant's counsel[14] dismissed the allocution memorandum as a "rehash" of previously published material on drug addiction and emphasized appellant's fitness for the drug rehabilitation program open to veterans. Counsel requested a commitment for treatment under the Narcotic Addict Rehabilitation Act or, alternatively, probation on condition that appellant participate in that program. The Government, on the other hand, sought "a substantial sentence," arguing that the

evidence at trial and the information in the allocution memorandum showed that appellant was a drug "pusher." The court then imposed the three-to-nine-year sentences,[15] and subsequently denied motions to reconsider them.[16]

## II

The Narcotic Addict Rehabilitation Act declares the congressional policy "that certain persons charged with or convicted of violating Federal criminal laws, who are determined to be addicted to narcotic drugs, and likely to be rehabilitated through treatment, should, in lieu of prosecution or sentencing, be civilly committed for confinement and treatment designed to effect their restoration to health, and return to society as useful members."[17] Title II of the Act sets forth the procedures through which a convicted person may realize its benefits.[18] Commitment pursuant to the Act is limited to "eligible offender[s],"[19] and is conditioned upon a determination by the sentencing court "that [the] eligible offender is an addict and is likely to be rehabilitated through treatment."[20] If, on the other hand, "the court determines that an eligible

---

7. Government's Allocution Memorandum, filed July 29, 1974.

8. *Id.* at 4.

9. The memorandum describes "functionaries" as those who carry on the daily activities of a drug operation and thereby limit the exposure of the principal operators to detection and arrest. *Id.* at 2.

10. Appellant's role as a "trustee" was explained as follows:
 [H]e would make the sales to, and collect the money from, other distributors. In effect, he would insulate the boss from arrest because the buyer would deal with him and never with the boss. [Appellant] would get his narcotics from the boss on consignment, *i. e.,* he would get a discounted price on the drugs from the boss and would pay the boss once he sold the drugs, at a higher price, to distributors who in turn would "cut" the drugs and sell to the average street buyer.
 *Id.* at 14. The memorandum set forth the Government's offer to make available to the court and defense counsel *in camera* the name of appellant's boss.

11. *Id.* at 13.

12. See note 28 *infra.*

13. Government's Allocution Memorandum, *supra* note 7, at 1.

14. After return of the jury's verdict, appellant retained new counsel, who represented him at sentencing. On this appeal he is represented by still another attorney.

15. See note 2 supra and accompanying text.

16. See text *infra* following note 43.

17. 42 U.S.C. § 3401 (1970). See also S.Rep.No. 1667, 89th Cong., 2d Sess. 12 (1966); H.R.Rep. No.1486, 89th Cong., 2d Sess. 7 (1966); U.S. Code Cong. & Admin.News, 1966, p. 4245; *Marshall v. United States,* 414 U.S. 417, 422–423, 94 S.Ct. 700, 704–705, 38 L.Ed.2d 618, 623–624 (1974).

18. See 18 U.S.C. §§ 4251 to 4255 (1970).

19. See 18 U.S.C. §§ 4252, 4253 (1970).

20. 18 U.S.C. § 4253(a) (1970).

offender is not an addict, or is an addict not likely to be rehabilitated through treatment, it [must] impose such other sentence as may be authorized or required by law." [21]

Appellant's initial claim is that the District Court erred in imposing the three-to-nine-year sentences of imprisonment. His thesis is that on the facts of the case he was entitled to a commitment for treatment under the Act, or at least to an evidentiary hearing wherein his eligibility [22] therefor might be explored. The Government argues that the District Court's choice of sentences is unreviewable, and that in any event the record dictates the conclusion that appellant is neither an addict [23] nor an "eligible offender." [24] Because we agree with the Government on the last point, there is no occasion to consider the other two. [25]

The Act provides that the term "eligible offender" excludes, *inter alia,* "an offender

who is convicted of unlawfully . . . selling . . . a narcotic drug, unless the court determines that such sale was for the primary purpose of enabling the offender to obtain a narcotic drug which he requires for his personal use because of his addiction to such drug." [26] In the case at bar, appellant was convicted on two counts of unlawfully distributing heroin—clearly, then, "of unlawfully . . . selling . . . a narcotic drug." [27] Thus the only question remaining for the District Court's decision was whether the sales were made primarily to enable appellant to secure drugs to satisfy an addiction.

The evidence adduced at appellant's trial strongly indicated that he was engaged in wholesaling narcotics. [28] And, the information conveyed by the Government's allocution memorandum cast appellant in that role positively. [29] Neither the trial evidence, the presentence report, nor the memoran-

21. 18 U.S.C. § 4253(b) (1970).

22. See text *infra* at note 26.

23. Although the presentence report recommended an examination for addiction, that alternative was superseded by appellant's request, which the District Court honored, for an examination at the Veterans Administration hospital to determine his acceptability in its drug treatment program. As the parties concede, the hospital's examination apparently did not extend to addiction. No further examination was sought by appellant, nor directed by the District Court, which seemingly was satisfied that, irrespective of addiction, appellant was unqualified for commitment under the Act because his drug sales were not for the purpose of supporting a personal narcotic addiction. See text *infra* at notes 26–34. Thus the claim of addiction rests wholly on statements by appellant to his probation officer during the presentence investigation that he had been "snorting" heroin, and to the court on sentencing that he was a drug user. On the other side of the coin, appellant testified at trial that he had never seen anyone sell narcotics, and his mother, with whom he lived, told the probation officer that appellant never gave any indication of drug use. It is possible that the District Court actually resolved the issue by assessing credibility unfavorably to appellant. In the view we take of the case, however, the court's outcome in this regard is immaterial.

24. See 18 U.S.C. § 4251(f) (1970).

25. This is not a case wherein the sentencing court failed to consider the possibility of a commitment under the Act, see *United States v. Hunter,* 158 U.S.App.D.C. 256, 257, 485 F.2d 1035, 1036 (1973), or left the record unclear as to whether it did so, see *United States v. Gaines,* 140 U.S.App.D.C. 402, 406, 436 F.2d 150, 154 (1970), or was confused, see *United States v. Collins,* 139 U.S.App.D.C. 392, 399, 433 F.2d 550, 557 (1970), or misguided, see *United States v. Williams,* 157 U.S.App.D.C. 355, 356–357, 484 F.2d 835, 836–837 (1973), in that connection. On the contrary, the District Court gave the matter its serious attention, and rejected such a commitment on a record amply supporting its action.

26. 18 U.S.C. § 4251(f)(2) (1970).

27. Compare *Neria v. United States,* 493 F.2d 913, 914 (5th Cir. 1974).

28. The trial testimony depicted two sales, each at the price of $150, of heroin 4.7% pure—substantially above the street percentage—to an undercover officer believed by appellant to be a college student reselling it on campus. It also portrayed an offer by appellant to sell a larger quantity at $525, a price reflecting a $75 discount.

29. See text *supra* at notes 7–13. The memorandum also charged a third sale by appellant, for which the Government did not seek an indictment. Government's Allocution Memorandum, *supra* note 7, at 7. It further alleged

dum suggested that appellant was peddling simply to support a habit.

Appellant argues, nonetheless, that we should either hold that his eligibility for the sought-after commitment was established on the record or remand for further hearing on that score. The only basis urged for this position is a theory drawing upon a bit of information gleaned from the trial transcript. The course of reasoning, as we understand it, is that at the time of the alleged offenses appellant was, as he testified, unemployed and financially dependent upon his parents, and that permits an inference that he made the sales in question in order to fund a supply of narcotics for personal use.

The difficulties with this approach, as is immediately apparent, are manifold. It rests upon appellant's own self-serving assertion of financial dependence, a claim disputed by other information before the court.[30] It assumes that appellant was an addict, a fact likewise open to serious question.[31] It also assumes that an inference so weak, even if warranted, could subvert the affirmative indicia of profiteering—just for the sake of profiteering—which the Government brought forth in the District Court. Most importantly, appellant's financial plight, if such there was, in no way tended to give rise to an inference that

profits from his sales were actually devoted to purchases of narcotics for personal use. Put another way, appellant's need for money did not of itself lead logically to a deduction that the money derived from his drug-trafficking activities was needed or used for any purpose in particular.

Given appellant's convictions for selling narcotics, he could properly have been committed under the Act, we repeat, only if the District Court determined that the sales supported a personal drug addiction.[32] The court made no such determination; indeed, the court made clear its view that appellant was a dangerous and inveterate trafficker in narcotics.[33] Beyond that, the court was both empowered and compelled to act on the information before it, and no record support for appellant's theory is apparent. Under these circumstances, we cannot say that the court erred in declining to resort to the ameliorative provisions of the Act.[34]

## III

We turn now to appellant's claim of ineffective assistance of counsel when the District Court imposed its sentence.[35] The Government's allocution memorandum was served on appellant's counsel[36] a week ahead of sentencing, but appellant asserts that counsel never discussed the contents of

that during one of the sales appellant informed the undercover officer that the heroin sold would make a "five-hit"—that is, that it could be diluted for retail distribution by adding substantial amounts of a "cutting" material—and that he had a considerable quantity of heroin on his person. *Id.* at 6.

30. We refer not only to profitable drug-selling reflected by the trial transcript and the Government's allocution memorandum but also to a statement by appellant, communicated to the court in the presentence report, indicating that he was receiving $80 per week in unemployment compensation when the alleged offenses transpired.

31. See note 23 *supra*.

32. See text *supra* at note 26.

33. See note 45 *infra* and accompanying text.

34. Compare *United States v. Kelley,* 476 F.2d 211, 212 (1st Cir.), *cert. denied,* 414 U.S. 913, 94

S.Ct. 255, 38 L.Ed.2d 155 (1973); *United States v. MacDonald,* 455 F.2d 1259, 1264–1265 (1st Cir. 1972); *United States v. Clayton,* 450 F.2d 16, 21 (1st Cir. 1971), *cert. denied,* 405 U.S. 975, 92 S.Ct. 1200, 31 L.Ed.2d 250 (1972); *Ramos v. United States,* 432 F.2d 423, 424 (9th Cir. 1970); *United States v. Johnson,* 373 F.Supp. 1057, 1059 (D.Del.1974); *United States v. Porter,* 277 F.Supp. 655, 657 (D.Minn.1967). *Cf. United States v. Salazar,* 485 F.2d 1272, 1275–1276, 1280 (2d Cir. 1973), *cert. denied,* 415 U.S. 985, 94 S.Ct. 1579, 39 L.Ed.2d 882 (1974).

35. We reach this issue notwithstanding our holding on commitment under the Narcotic Addict Rehabilitation Act since, as appellant contends, an inadequate performance by counsel could have affected orthodox sentencing in terms of severity.

36. See note 14 *supra*.

the memorandum with him.[37] He also complains of counsel's failure to dispute the allegation, made in the memorandum, that appellant was a party to the District's drug traffic.

■ To be sure, appellant was as much entitled to effective representation by counsel at sentencing as at any other critical stage of his trial.[38] And it cannot be gainsaid that the omissions which appellant charges, if true, would raise a serious question as to whether the representation he was afforded measured up to constitutional standards.[39] The record, however, does not support the contention that counsel's alleged derelictions frustrated appellant's opportunity to present his side of the controversy.

■ Even assuming that appellant knew nothing of the memorandum before sentencing, he certainly became aware of it during the course of oral allocution. Thereat, the court heard not only from appellant and his counsel, but also from counsel representing the Government.[40] The latter opened his presentation with a specific reference to "the material we have already submitted to the Court in our ten paged [sic] allocution,"[41] and soon echoed the point the memorandum sought to make. Not only did "the evidence show[] quite clearly and convince[] the Jury that [appellant] is a pusher," Government counsel declared, but also "[t]he evidence shows based

on what we have filed in our allocution that [appellant] is in fact a substantial pusher and that he, indeed, was one of the key functionaries in one of this city's biggest narcotics dealers. . . ."[42] And not only did appellant remain silent in the face of that statement,[43] but in a personal letter written to the court three days later in an attempt to change the sentence, he nowhere among his listed justifications complained either of the Government's accusation or of any failure of his counsel to give him presentence warning of it.

Nor is that all. More than two months after this appeal was taken, appellant's present counsel filed in the District Court a motion seeking vacation of the sentences imposed and resentencing pursuant to the Narcotic Addict Rehabilitation Act. The motion referred to the allocution memorandum and argued that the sentence was prejudiced by the very same statements complained of here. Conspicuously absent from the motion, however, was any claim that appellant was not informed of the memorandum before the date of sentencing, and any complaint that his counsel should or could have undertaken the challenge of the accuracy of those statements.

Finally, some four months after sentencing, appellant broke his silence and, for the first time, stated that no inquiry had been made of him by his counsel prior to sentencing to ascertain whether the grave allega-

---

37. At one point appellant seems to question the propriety, irrespective of the adequacy of counsel's representation, of a court's use of damaging hearsay information in the formulation of a sentence. Very recently, in *United States v. Bass,* 175 U.S.App.D.C. 282, 535 F.2d 110 (1976), we discussed that matter and held that the accused's failure to challenge the accuracy of the information is a sufficient indicium of its reliability for sentencing uses. *Id.* at 292–293, 535 F.2d at 120–121. Here, of course, the same conclusion obtains. See text *infra* at notes 40–45.

38. *Mempa v. Rhay,* 389 U.S. 128, 133–134, 88 S.Ct. 254, 256–257, 19 L.Ed.2d 336, 339–340 (1967); *Moore v. Michigan,* 355 U.S. 155, 159–160, 78 S.Ct. 191, 193–194, 2 L.Ed.2d 167, 170–171 (1957); *United States v. Johnson,* 155 U.S.App.D.C. 28, 31, 475 F.2d 1297, 1300 (1973);

*Gadsden v. United States,* 96 U.S.App.D.C. 162, 165, 223 F.2d 627, 630 (1955).

39. See, *e. g., United States v. DeCoster,* 159 U.S.App.D.C. 326, 331–334, 487 F.2d 1197, 1201–1205 (1973).

40. Not, however, counsel who had tried the case for the Government.

41. Sentencing Tr. 6.

42. Sentencing Tr. 6–7.

43. We are mindful that appellant's personal statement to the court preceded Government counsel's statement, but we perceive no impediment to disputation by appellant had he been inclined to respond, particularly since there was a response by his counsel simply for the asking.

tions of the Government's allocution memorandum were true. A motion, theorizing that the sentencing judge had relied on those allegations in fashioning the sentences,[44] requested that it be set aside and that appellant be permitted an opportunity to rebut. The sentencing judge, not persuaded to that course, denied the motion,[45] and we cannot say that he was wrong in doing so.

■ As an appellate court, our adjudicatory authority extends only to questions amply grounded in the record.[46] That consideration comes to the fore when a charge of ineffective assistance of counsel is sought to be leveled on direct appeal from a conviction. Some such charges, as for example inexcusably inept examination of witnesses, can be resolved on the basis of the trial transcript. Others, such as inadequate investigation or preparation, may require more than the transcript supplies. In the instant case, the record fully supports appellant's assertion that at sentencing his counsel did not specifically contest the Government's averments that appellant was deeply involved in the local traffic in drugs.[47] But by its very nature, any evidence that counsel failed to confer with appellant on those allegations lies completely outside the transcript of the trial proceedings.

In recognition of the inherent limitations of trial transcripts in this regard, we have heretofore taken pains to prescribe a procedure by which the difficulties otherwise encountered can be avoided. Nearly three years ago, in *United States v. DeCoster*,[48] we said:

> [W]hen a claim of ineffective assistance of counsel is contemplated, it should first be presented to the District Court in a motion for a new trial. If such proceeding, evidence *dehors* the record may be submitted by affidavit, and when necessary the district judge may order a hearing or otherwise allow counsel to respond. If the trial court is willing to grant the motion, this court will remand. If the motion is denied, the appeal therefrom will be consolidated with the appeal from the conviction and sentence. The record of any hearing held on the motion, and any documents submitted below, will become a part of the record on appeal.[49]

■ As previously stated, a motion for resentencing charging ineffective assistance of counsel when appellant was sentenced was rejected by the District Court,[50] but we perceive no basis upon which that ruling could now be upset. In the first place, since appellant did not prosecute an appeal from the ruling on the motion, our jurisdiction to entertain the point is to say the least, not clear.[51] And, in view of the sen-

---

**44.** The sole basis for this position is appellant's appraisal of the sentence as one "of unusual severity in view of [his] previous lack· of involvement with the law." We note, however, the obnoxiousness of the offenses of which he was convicted. We note, too, that at the time of sentencing appellant also faced a charge of possession of an unlicensed pistol found in his car when he was arrested on the drug charges. Appellant was subsequently convicted on the weapons charge and sentenced thereon to a term of imprisonment. *District of Columbia v. Pinkney*, Crim.No. 10043–74 (D.C.Sup.Ct.), *appeal pending*, No. 8752 (D.C.App.).

**45.** The judge, at the time, observed:

> This defendant was convicted of selling 2598 milligrams of heroin. He was pushing in the area of a college campus. His demeanor at trial and at sentence before the Court impressed the Court that he is a cold, calculating individual who knows exactly what he is

doing and who will resume his nefarious ways as soon as he is released.

**46.** *E. g., United States v. McCord*, 166 U.S.App. D.C. 1, 19 n. 65, 509 F.2d 334, 352 n. 65 (1974), *cert. denied*, 421 U.S. 930, 95 S.Ct. 1656, 44 L.Ed.2d 87 (1975); *Washington v. United States*, 130 U.S.App.D.C. 374, 380 n. 31, 401 F.2d 915, 921 n. 31 (1968).

**47.** See text *supra* following note 13.

**48.** *Supra* note 39.

**49.** 159 U.S.App.D.C. at 333–334, 487 F.2d at 1204–1205 (footnotes omitted).

**50.** See text *supra* at notes 44–45.

**51.** A motion for a new trial bottomed on newly discovered evidence extends the time for appeal from the judgment of conviction only in the event that the motion is made before entry of the judgment or within ten days thereafter.

tencing judge's specification of his reasons for denying the motion,[52] it is equally unclear whether the allocution memorandum played a significant part in the sentencing decision. We need not pass on these aspects of the case, however, because for even additional reasons the District Court must be affirmed.

 Our *DeCoster* decision plainly envisioned a motion bolstered by affidavit at its key points,[53] an expectation emanating from the procedural vehicle which *DeCoster* pressed into service as a record-implementing device.[54] The vehicle, we said, was a

motion for a new trial,[55] obviously one presenting new evidence in the sense of evidence outside the record—in other words, a new-trial motion based on newly discovered evidence.[56] An essential characteristic of such a motion is a disclosure of evidence portraying the movant's claim materially and resolutely,[57] and evincing a capability of mounting a serious challenge.[58] By the same token, a motion charging ineffective assistance of counsel must set forth evidence upon which the elements of a constitutionally deficient performance might properly be found.[59]

Fed.R.App.P. 4(b); *Rayor v. United States*, 323 F.2d 519, 522 (9th Cir. 1963), *cert. denied*, 375 U.S. 993, 84 S.Ct. 632, 11 L.Ed.2d 479 (1964). An order denying a new-trial motion predicated upon newly discovered evidence—a ground arising subsequent to judgment—is final and appealable, and should be appealed separately from the appeal from this judgment. *Smith v. United States*, 109 U.S.App.D.C. 28, 31, 283 F.2d 607, 610 (1960), *cert. denied*, 364 U.S. 938, 81 S.Ct. 387, 5 L.Ed.2d 369 (1961); *Zachary v. United States*, 275 F.2d 793, 796 (6th Cir.), *cert. denied*, 364 U.S. 816, 81 S.Ct. 46, 5 L.Ed.2d 47 (1960). But see *Foman v. Davis*, 371 U.S. 178, 181, 182, 83 S.Ct. 227, 230, 231, 9 L.Ed.2d 222, 225, 226 (1962). And it goes without saying that a final order, even in the criminal case, normally becomes unalterable upon expiration of the period for appeal.

52. See note 45 *supra*.

53. See text *supra* at note 49. *United States v. White*, 168 U.S.App.D.C. 309, 311, 514 F.2d 205, 207 (1975); *United States v. Curry*, 497 F.2d 99, 100–101 (5th Cir.), *cert. denied*, 419 U.S. 1035, 95 S.Ct. 519, 42 L.Ed.2d 311 (1974); *United States v. Moore*, 452 F.2d 569, 574 (6th Cir. 1971), *cert. denied*, 407 U.S. 910, 92 S.Ct. 2435, 32 L.Ed.2d 684 (1972); *United States v. Stahls*, 194 F.Supp. 849, 850–851 (S.D.Ind. 1961).

54. See text *supra* at note 49.

55. See text *supra* at note 49.

56. See Fed.R.Crim.P. 33. When such a motion is made within seven days after a verdict or finding of guilt, the standard governing its disposition is the interest of justice. *Id.*; *Brodie v. United States*, 111 U.S.App.D.C. 170, 172, 173, 295 F.2d 157, 159, 160 (1961); *Benton v. United States*, 88 U.S.App.D.C. 158, 160, 188 F.2d 625, 627 (1951). When, however, the motion is made outside the seven-day period—and under the rule it must be made within a two-year period—it must disclose information dem-

onstrating compliance with a number of requirements. See generally 2 C. Wright, Federal Practice, § 557 (1969).

57. *E. g., Mesarosh v. United States*, 352 U.S. 1, 9, 77 S.Ct. 1, 5, 1 L.Ed.2d 1, 7 (1956); *United States v. McCord, supra* note 46, 166 U.S.App. D.C. at 9–10, 509 F.2d at 342–343; *United States v. Lightfoot*, 165 U.S.App.D.C. 177, 182, 506 F.2d 238, 243 (1974); *United States v. Mentesana*, 305 F.2d 214, 215–216 (2d Cir. 1962), *cert. denied*, 375 U.S. 848, 84 S.Ct. 102, 11 L.Ed.2d 75 (1963).

58. See *Newsome v. Smyth*, 261 F.2d 452, 454 (4th Cir. 1958), *cert. denied*, 359 U.S. 969, 79 S.Ct. 883, 3 L.Ed.2d 837 (1959); *United States v. Frame*, 454 F.2d 1136, 1138 (9th Cir.), *cert. denied*, 406 U.S. 925, 92 S.Ct. 1794, 32 L.Ed.2d 126 (1972); *United States v. Norman*, 402 F.2d 73, 78 (9th Cir. 1968), *cert. denied*, 397 U.S. 938, 90 S.Ct. 949, 25 L.Ed.2d 119 (1970); *Dansby v. United States*, *291 F.Supp. 790, 794 (S.D. N.Y.1968); 2 C. Wright, Federal Practice § 557 at 517–518 (1969).*

59. Our conclusion in this regard in no way impinges upon the rule, which we readily reaffirm, that once a substantial violation of counsel's duties is shown, the Government's burden is to demonstrate lack of prejudice therefrom. *United States v. DeCoster, supra* note 39, 159 U.S.App.D.C. at 333, 487 F.2d at 1204. In the case before us, we deal only with a procedural prerequisite to a hearing on appellant's assertion that the representation afforded at sentencing fell below the constitutional norm. The essence of appellant's contention is that sentencing counsel deprived him of the opportunity to combat allegations of the Government's allocution memorandum by failing to inform him of the memorandum. See note 60 *infra*. Only if the evidentiary elements of that claim had appeared in appellant's motion would he have been entitled to a hearing, and only if evidence offered at a hearing tended to estab-

Appellant's motion did not meet these wholesome requirements. There was no affidavit supporting the motion, nor was the motion otherwise verified. There was only the bare statement that sentencing counsel did not confer with appellant on the charge in the Government's allocution memorandum that appellant was a cog in the local drug-distributing machinery.[60] The absence of substantiation therefor is the better assessed in conjunction with appellant's failure to raise the claim in his postsentence letter to the sentencing judge,[61] and in his present counsel's unexplained omission to advance it earlier than he did.[62] Moreover, while insisting upon a further opportunity to dispute the drug-involvement allegations of the Government's memorandum, appellant's motion gave no indication as to the evidence, if any, by which he would undertake an effort at refutation.[63]

*Decoster* motions call on the District Court for a substantial and indispensable element of judicial discretion.[64] In consequence, our review function is limited to ascertaining whether the court's action was arbitrary or otherwise in contravention of law.[65] In the circumstances here, we conclude that it was not. We find no error in the District Court's refusal to proceed on appellant's unsupported assertion that his lawyer had deprived him of the benefit of undisclosed evidence.

The judgment appealed from is

*Affirmed.*

lish the elements would the Government have been summoned to disestablish prejudice. But if, on the other hand, appellant had met these preconditions, the Government would then have encountered the burden of proving that counsel's dereliction did not harm appellant—for example, because the allocution memorandum actually had no effective role in the sentencing process.

**60.** Appellant's motion also alleged that sentencing counsel did not attempt to dispute the allegations in the Government's allocution memorandum, a matter which the record before us fully sustains. But it is evident that any omission by counsel in that regard was inconsequential unless there was evidence upon which counsel could undertake a refutation, something that nowhere appears.

**61.** See text *supra* following note 42. *Cf. United States v. Bass, supra* note 37, 175 U.S.App.D.C. at 292–293, 535 F.2d at 120–121.

**62.** See text *supra* at notes 40–45 and note 43 *supra.*

**63.** We do not imply that an accused bears any burden, on pain of a harsher sentence, of disproving statements made in a prosecutor's allocution memorandum. See *United States v. Bass, supra* note 37, 175 U.S.App.D.C. at 292, 535 F.2d at 120. *United States v. Weston,* 448 F.2d 626, 634 (9th Cir. 1971), *cert. denied,* 404 U.S. 1061, 92 S.Ct. 748, 30 L.Ed.2d 749 (1972). We speak merely to the exigencies of the preliminary showing incumbent upon after-the-fact movants for *DeCoster*-type relief.

**64.** See cases cited *supra* notes 57–58.

**65.** *Smith v. United States, supra* note 51, 109 U.S.App.D.C. at 29, 283 F.2d at 608. *United States v. Fancher,* 319 F.2d 604, 606 (2d Cir. 1963); *United States v. Granza,* 427 F.2d 184, 185 (5th Cir. 1970); *United States v. Yager,* 220 F.2d 795, 796 (7th Cir.), *cert. denied,* 349 U.S. 963, 75 S.Ct. 895, 99 L.Ed. 1285 (1955).