UNITED STATES of America, Appellee,

v.

Sean M. FENNELL, Appellant.

No. 93–3064.

United States Court of Appeals,
District of Columbia Circuit.

Argued Feb. 9, 1995.

Decided May 5, 1995.

Order on Petition for Rehearing
July 17, 1995.

A.J. Kramer, Federal Public Defender, Washington, DC, argued the cause and filed the briefs, for appellant. William G. Spencer, Washington, DC, entered an appearance.

Glenn L. Kirschner, Asst. U.S. Atty., Washington, DC, argued pro hac vice, for appellee. On the brief for appellee were Eric H. Holder, Jr., U.S. Atty., John R. Fisher and Thomas J. Tourish, Jr., Asst. U.S. Attys., Washington, DC.

Before WALD, SILBERMAN and TATEL, Circuit Judges.

Opinion for the Court filed by Circuit Judge TATEL.

TATEL, Circuit Judge:

On the evening of August 28, 1992, District of Columbia Metropolitan Police Department officers executed a search warrant for the two ground floor apartments of a four-unit apartment building in Northeast Washington. The police testified that they knocked, announced their presence, received no response, and began using a battering ram repeatedly on the outside door. Over two minutes elapsed before they gained entry to the building. One of the officers testified that during that time he heard people move from the left-side apartment to the right-side apartment. Once inside the building, the police found the door to Apartment 1, left of the entrance, open, with the television and lights on but no one home. Over thirteen grams of cocaine base (crack), along with cocaine cutting and packaging equipment, were on the dining room table and elsewhere in Apartment 1. Across the hall in Apartment 2, the police found resident Cyrenna Belton, her infant son, her 13–year–old cousin, and defendants Sean Fennell and Martel Beasley. The police recovered a loaded handgun from the floor of Belton's bedroom closet.

Fennell and Beasley were tried separately for possession of cocaine base with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(iii). Fennell was also tried for four gun offenses: using or carrying a firearm during a drug trafficking offense, in violation of 18 U.S.C. § 924(c)(1); possession of a firearm while under a separate felony indictment, in violation of 18 U.S.C. § 922(n); possession of a firearm with an obliterated serial number, in violation of 18 U.S.C. § 922(k); and carrying a pistol

without a license, in violation of 22 D.C.Code Ann. § 3204(a). Presenting no defense evidence, Fennell moved for a judgment of acquittal on all counts, which the court denied. Largely on the basis of circumstantial evidence, the jury convicted Fennell on all counts. The court sentenced Fennell to 138 months in prison.

Fennell now challenges the district court's denial of his motion for judgment of acquittal, arguing that the evidence was insufficient to support the jury verdicts on each count. He also challenges remarks to the jury about his prior felony indictment, the admission of an expert's testimony, two statements in the prosecutor's closing argument, and one jury instruction. In addition, he alleges ineffective assistance of counsel. We affirm all of Fennell's convictions except possession of a firearm with an obliterated serial number, which the government agrees we must reverse. We do not reach Fennell's ineffective assistance claims because he failed to raise them below in his motion for relief from imprisonment under 28 U.S.C. § 2255.

## I.

▪ We conduct a *de novo* review of Fennell's challenge to the sufficiency of the evidence. *United States v. Singleton,* 702 F.2d 1182, 1183 (D.C.Cir.1983) (en banc). Our task is not to determine whether the evidence satisfies us of his guilt beyond a reasonable doubt, but rather, " 'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " *United States v. Bailey,* 36 F.3d 106, 111 (D.C.Cir. 1994) (en banc) (quoting *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979)), *cert. granted,* —— U.S. ——, 115 S.Ct. 1689, 131 L.Ed.2d 554 (1995). We draw no distinction between direct and circumstantial evidence, *Holland v. United States,* 348 U.S. 121, 139–40, 75 S.Ct. 127, 137–38, 99 L.Ed. 150 (1954), and we recognize that the "jury is entitled to draw a vast range of reasonable inferences" from the evidence, *United States v. Long,* 905 F.2d 1572, 1576 (D.C.Cir.), *cert. denied,* 498 U.S. 948,

111 S.Ct. 365, 112 L.Ed.2d 328 (1990). Applying these standards, we find the evidence sufficient to sustain all but one of Fennell's convictions.

 The testimony of both Cyrenna Belton and her cousin was an important part of the prosecution's case against Fennell. Fennell challenges the credibility of these witnesses, claiming that they contradicted one another and that "Belton had obvious reason to lie." Appellant's Brief at 24. Yet because neither witness's testimony is inherently implausible, we must defer to the jury's credibility assessments. *See Anderson v. Bessemer City*, 470 U.S. 564, 575, 105 S.Ct. 1504, 1512, 84 L.Ed.2d 518 (1985); *United States v. Osum*, 943 F.2d 1394, 1404–05 (5th Cir.1991); *United States v. Cardona–Rivera*, 904 F.2d 1149, 1152–53 (7th Cir.1990). The jury therefore could have relied upon this testimony, and reasonable inferences therefrom, in reaching its verdicts. *See United States v. Dale*, 991 F.2d 819, 826 (D.C.Cir.), *cert. denied*, —— U.S. ——, 114 S.Ct. 650, 126 L.Ed.2d 607 (1993).

With respect to the drug count, Belton testified that Fennell and Beasley, although not the residents of Apartment 1, were frequent visitors there; that the actual tenant of Apartment 1, a crack addict, had been arrested on August 26, yet Belton saw Fennell and Beasley in the apartment on August 27, sitting on the couch and watching television; and that she had seen Beasley at the apartment the evening of August 28, several hours prior to the arrival of the police. She also testified that when the police arrived, she was asleep on her living room couch, with the door to her apartment unlocked, while her infant son slept in her bedroom. As the police pounded on the front door of the building, she awoke to find Fennell and Beasley in her living room, looking nervously out the window at the police. Belton's cousin testified that she had seen both Fennell and Beasley in Apartment 1 earlier that day; that she was awake playing video games in the other bedroom of Belton's apartment when the police arrived; and that she had seen Fennell and Beasley come into Belton's apartment after the police knocked on the front door of the building. Belton and her cousin both testified of conduct from which the jury could have inferred that Fennell was conscious of and trying to conceal his guilt: once in Belton's apartment, Fennell and Beasley tried to hide over $4000 in cash and a set of keys to Apartment 1, dropping the keys behind the couch and throwing the cash to Belton's cousin, who threw it back to Fennell; and as the officers entered Belton's apartment, Fennell held the telephone to his ear as though he was engaged in a conversation, although no one had called and he had called no one.

The police never found the cash, but they did recover two sets of keys to Apartment 1 from Belton's apartment, one from under the couch, and the other from between the couch cushions where Fennell sat while the police searched the premises. An officer testified that he had found the keys in Fennell's pocket when he first frisked Fennell, that he permitted Fennell to retain the keys once he determined that they posed no danger, but that they were no longer in Fennell's pocket when the police later arrested him.

An expert police witness called by the government testified that drug dealers, to avoid capture, commonly deal from a "stash house"—the house of another person, especially a person with drug problems. The police testified that when they entered Apartment 1, two chairs were at the dining room table, each with a separate pile of cocaine, a razor blade, and small plastic bags on the table in front of it. The police also testified that elsewhere in the apartment they found two triple-beam scales and other drug paraphernalia. The expert testified that in his opinion the evidence showed that the occupants were cutting the cocaine for distribution, and that they left in a hurry, because "no one leaves this amount of drugs laying around on the table with the front door open."

All of this evidence, together with the officer's testimony that he heard people moving from the left-side apartment to the right-side apartment as the police tried to enter the building, sufficed to permit the jury to infer that Fennell and Beasley had been in Apartment 1, in actual possession of the cocaine base, when the police arrived. Because Fennell stipulated that the quantity of cocaine

recovered was "consistent with intent to distribute," the jury had sufficient evidence to convict Fennell of possession with intent to distribute.

■ Although not as strong, the evidence supporting the related weapons offenses is sufficient for us to sustain all but one of the remaining convictions. We begin with the .357 magnum handgun that the police discovered wrapped in a red, white and blue scarf on the floor of Belton's bedroom closet. The handgun bore an obliterated serial number. On the vanity next to the closet, the police found Fennell's photo identification card. In Apartment 1, the police found several rounds of .38 caliber ammunition that the .357 magnum could fire.

Again, Belton's testimony is critical. Although Belton testified that she did not see Fennell with a gun, she also testified that the red, white and blue scarf had been on her dresser when she finished cleaning her apartment earlier that day, and that it was still there when she put her son to bed shortly before she fell asleep on the couch. She also testified that the only item on the vanity when she finished cleaning and again when she put her son to bed was a pair of glasses. After her cousin threw the money back to Fennell in the living room of her apartment, Belton testified, Fennell briefly disappeared with the money towards the back of the apartment where the two bedrooms were located, returning to the living room before the police entered.

The expert witness testified that drug dealers commonly carry weapons to protect themselves against robbery, and that people who rob drug dealers will often announce they are police officers in an attempt to disarm the drug dealers. According to this witness, drug dealers reacting to what ostensibly is a police raid or search will therefore retain their weapons until they can confirm it is actually the police, at which point they will try to get rid of their weapons. This evidence, together with Belton's testimony, was adequate for the jury to conclude that Fennell had actual possession of the gun when the police arrived, had waited to satisfy himself that the persons at the door were in fact the police, and then had tried to hide the gun in Belton's bedroom, at the same time ridding himself of his identification card, and perhaps the cash, which the police did not recover.

Because the jury could reasonably conclude that Fennell had actual possession of the weapon while in Apartment 1 in order to protect himself while he was packaging drugs, we sustain his conviction under 18 U.S.C. § 924(c), which prohibits using or carrying a gun "during and in relation to" a drug trafficking offense. 18 U.S.C. § 924(c)(1) (Supp. V 1993). We thus need not determine whether the evidence also supported an inference that Fennell had constructive possession of the weapon while it was in Belton's closet, or whether while in the closet the weapon was sufficiently "proximate to and accessible from" the location of a drug trafficking offense for the jury to infer that Fennell was using it to protect the drug trafficking operation, under the standard we announced last year in *Bailey*. 36 F.3d at 116.

■ Because Fennell had stipulated that he was under a separate felony indictment at the time of his arrest, and because the government introduced uncontradicted evidence that he did not have a license for the handgun, Fennell's convictions on the charges of possession of a firearm while under a separate felony indictment, in violation of 18 U.S.C. § 922(n) (1988), and carrying a pistol without a license, in violation of 22 D.C.Code Ann. § 3204(a) (Supp.1994), followed directly from the jury's determination that he possessed the gun. We agree with Fennell, however, that we must reverse his conviction of violating 18 U.S.C. § 922(k), which makes it unlawful for "any person knowingly to ... possess or receive any firearm which has had the importer's or manufacturer's serial number removed, obliterated, or altered." 18 U.S.C. § 922(k) (Supp. V 1993). Although we held in 1978 that "Congress did not require that persons convicted under § 922(k) have known that the serial number was removed, but only that they have received the firearm knowingly," *United States v. Dorsey*, 591 F.2d 922, 937 n. 19 (D.C.Cir.1978), Congress later amended the penalty provision for this statute to authorize

criminal penalties only for "whoever ... *knowingly* violates subsection ... (k) ... of section 922," 18 U.S.C. § 924(a)(1)(B) (Supp. V 1993) (emphasis added). Joining two other circuits that have considered this amendment, we conclude that under section 922(k) the government now must establish that the defendant knew of the obliteration. *See United States v. Haynes*, 16 F.3d 29, 34 (2d Cir.1994); *United States v. Hooker*, 997 F.2d 67, 72 (5th Cir.1993).

The government concedes that it was required to prove this element and that the instructions did not convey it to the jury. The instructions therefore were wrong as a matter of law. Because the government has represented that it will not retry Fennell on this count, we need not address whether the evidence would have sufficed to convict Fennell had the jury been properly instructed. Accordingly, we reverse Fennell's section 922(k) conviction.

## II.

■ We turn now to the several specific errors that Fennell alleges occurred during the course of his trial. He first argues that the district court erred several times in disclosing to the jury, and in twice permitting the prosecutor to mention, the parties' stipulation that Fennell was under a separate felony indictment when the police arrested him on August 28, 1992. Although this prior indictment was an element of the charged offense of possession of a firearm while under a separate felony indictment, Fennell claims that both the district court and the prosecutor specifically agreed not to mention it to the jury. Because Fennell's counsel did not object to any of the references to the prior indictment, we review this issue only for plain error. *See* FED.R.CRIM.P. 52(b). This requires us to determine: "(1) whether there is unwaived legal error, (2) whether the error was 'plain' or 'obvious' under current law, and (3) whether the error was prejudicial." *United States v. Washington*, 12 F.3d 1128, 1138 (D.C.Cir.), *cert. denied*, — U.S. ——, 115 S.Ct. 98, 130 L.Ed.2d 47 (1994). Prejudicial errors are those that "seriously affect the fairness, integrity or public reputation" of the trial. *United States v. Olano*,

— U.S. ——, ——, 113 S.Ct. 1770, 1779, 123 L.Ed.2d 508 (1993).

The alleged "agreement" not to mention the prior indictment is at best ambiguous. It arose from the district court's effort, in discussing stipulations before trial, to draw the parties' attention to our opinion in *United States v. Dockery*, 955 F.2d 50 (D.C.Cir. 1992), where we found that a trial court erred in refusing a request for severance of the joint trial of drug charges with an ex-felon firearm possession charge. *Id.* at 57. Although we did not adopt a *per se* rule requiring severance, we made clear that when such charges are jointly tried, the trial court must proceed with a "high level of care" in order to protect the defendant from the potential for prejudice resulting from the introduction of what would otherwise be inadmissible prior bad acts evidence. *Id.* at 50–51. Here, the district court properly recognized that similar prejudice may result from trying drug charges jointly with a charge that the defendant possessed a weapon while under a separate felony indictment. Surprisingly, Fennell's counsel appeared entirely unfamiliar with the *Dockery* issue.

After observing that Fennell's counsel had not requested severance of the section 922(n) count and that using a stipulation regarding the previous indictment could protect Fennell against the introduction of prejudicial prior bad conduct evidence, the court admonished the prosecutor to proceed cautiously with respect to any discussion of the stipulation. The court then sought the parties' guidance regarding whether further steps were necessary to minimize the potential for prejudice. The prosecutor asked whether the court was going to mention, in its initial instructions to the jury, that Fennell "was under felony and that was the charge, he was under felony indictment when he possessed the gun or whether you are not going to mention it." The prosecutor subsequently said "I would have no problem with the Court not saying it, your Honor, as long as we have got the stipulation," and added "I would have no problem with the jury never hearing about it." Responding, the court said "I will leave it out." Fennell claims that the "it" in this exchange referred to the indictment itself. Although this is certainly one interpretation, the "it" instead could have referred only to the charge underlying Fennell's prior indictment—possession of drugs with intent to distribute. Both the court and the prosecutor

did avoid disclosing the underlying charge, and any extrinsic evidence about it. This, together with the failure of Fennell's counsel to object to any of the references to his prior indictment, suggests that the parties may have understood the agreement only to bar discussion of the underlying charge and related evidence, not to bar mention of the indictment itself.

The latter interpretation of the agreement is reinforced by the fact that an agreement not to mention the indictment would have been improper. The jury must always be informed of the full nature, including each element, of the charged crime. *See United States v. Gilliam,* 994 F.2d 97, 101 (2d Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 335, 126 L.Ed.2d 280 (1993). Absent the parties' agreement to try the section 922(n) count to the bench, *see* FED.R.CRIM.P. 23(a); *Dockery,* 955 F.2d at 55, the district court was thus obligated to inform the jury of the stipulation about the prior indictment. Although the district court could have severed the count *sua sponte,* not doing so was not error, let alone plain error, once the parties had agreed to proceed by stipulation. *See Dockery,* 955 F.2d at 54 (describing use of stipulation as a safeguard that may permit joint trial). And because Fennell did not request severance or a bench trial, neither the court's nor the prosecutor's bare statements about the existence of the indictment constituted error. While some potential for prejudice undoubtedly remained, the court properly sought to minimize that potential by instructing the jury against using the stipulation for any purpose other than to establish that element of the section 922(n) offense. Such instructions provide additional protection of a defendant's rights in a joint trial of multiple counts, *see Dockery,* 955 F.2d at 55–56, and Fennell's counsel did not object.

Fennell's next two claims of error concern the district court's admission of the testimony of the prosecution's expert witness. After the expert stated that he had no personal knowledge of the events at the crime scene on August 28, 1992, the district court asked if he had personal knowledge of "what took place" at that location prior to August 28, 1992. The witness answered that he did, but the court did not follow-up, nor did Fennell's counsel object to the witness's testimony on the ground that the jury might believe that the expert was testifying from personal knowledge of the facts of this case, as Fennell now argues. We therefore review this issue for plain error. We similarly review for plain error—again, because Fennell's counsel did not object at trial—his claim that the district court should not have permitted the expert to state his opinion that the occupants of Apartment 1 had fled in haste upon hearing the police, an opinion that Fennell now asserts was sufficiently obvious without the expert's testimony.

Fennell's claim of error concerning the witness's prior personal knowledge of events at the apartment building fails because of his own lawyer's actions. On cross-examination, Fennell's counsel asked the expert a series of questions that made clear that the expert had no personal knowledge of any of the issues in this case, thus eliminating any potential for prejudice. Nor did admission of the allegedly superfluous opinion testimony about the hasty departure from Apartment 1 amount to plain error. We are satisfied that the expert was not invading the province of the jury by stating an opinion on the guilt or innocence of the defendant. *See United States v. Boney,* 977 F.2d 624, 630 (D.C.Cir. 1992). Even if we accepted Fennell's claim that the district court should have excluded this testimony as unnecessary or cumulative, we would find its admission harmless. *See United States v. Baker,* 693 F.2d 183, 189 (D.C.Cir.1982).

Fennell's remaining claims of error are that during closing argument, the prosecutor made two statements of fact not supported by record evidence. Because Fennell's counsel objected to one of these statements, we review it for "substantial prejudice." *United States v. Monaghan,* 741 F.2d 1434, 1443 (D.C.Cir.1984), *cert. denied,* 470 U.S. 1085, 105 S.Ct. 1847, 85 L.Ed.2d 146 (1985). The other, to which Fennell did not object, we review for plain error.

In the first statement that Fennell challenges, the prosecutor told the jury "that [Belton] had received drugs from Mr. Fennell and she also received them from Mr. Beasley and she distributed them." In response to Fennell's objection that the record contained no evidence that Fennell gave drugs to Belton, the district court instructed

the jury that "your recollection will control." We need not decide whether this response would have sufficed if in fact Fennell was correct that the record contained no evidence that Fennell gave drugs to Belton, because the record did contain such evidence. Belton's testimony included the following exchange:

A: ... one time I got it [drugs] from Sean [Fennell] but I ain't get it out of his hand.

Q: What do you mean?

A: I didn't get—it was his but I didn't get it from him.

Q: Who did you get it from?

A: Donald.

Q: How do you know it was from Sean?

A: Because he told me.

The Court: Who is "he"?

A: Don told me that he got it for me from Sean.

Q: Mr. Fennell?

A: Yes.

This exchange supported the prosecutor's statement that Belton received drugs from Fennell.

■ The prosecutor's second statement that Fennell challenges, to which his counsel did not object, is as follows:

You will also remember the testimony that when Mr. Fennell, the defendant, went down towards the bedroom both Miss Belton and [her cousin] said he had the money in his hand. When he returned he didn't have the money anymore. So you can infer that he did something with the money to hide it and you can also infer that at the same time he hid the gun.

Fennell argues that this statement was false because neither Belton nor her cousin testified that he had the money in his hand when he went down the hall towards the bedrooms, and because the cousin never testified that he went down the hall at all. We agree that the statement does not accurately convey the impact of the testimony. Although both Belton and her cousin did testify that Fennell had retaken possession of the money, and Belton further testified that Fennell then went down the hall, Fennell is correct that the cousin never testified that he went down the hall; her testimony is silent on this point.

While the statement therefore was overinclusive, it was but a modest overstatement, which did not suggest evidence where there was none, *see, e.g., United States v. Foster,* 982 F.2d 551, 555 (D.C.Cir.1993), and which could have been readily corrected with an objection. In light of the prosecutor's and the court's cautionary reminders that only the jury's recollection of the facts mattered, we find in this slight overstatement no prejudice that would "seriously affect the fairness, integrity or public reputation" of the trial, as required to establish a claim of plain error. *Olano,* —— U.S. at ——, 113 S.Ct. at 1779; *see, e.g., Gaither v. United States,* 413 F.2d 1061, 1078–80 (D.C.Cir.1969).

### III.

We turn finally to Fennell's claim of ineffective assistance of counsel. He alleges at least six failures of his trial counsel: (1) He did not seek to sever the count involving Fennell's prior indictment, or in any way to protect Fennell from the potential prejudice of trying this count jointly with the others; (2) he did not object to the expert witness's statement that he had personal knowledge of prior events at the apartment building; (3) he did not object to the prosecutor's suggestion that both Belton and her cousin had testified that Fennell went towards the bedrooms of Belton's apartment before the police arrived; (4) he filed no pretrial motions; (5) he filed no voir dire questions; and (6) he waived opening statement, in a case in which he also did not put on any defense. According to Fennell, these failures, individually and collectively, merit a finding of ineffective assistance of counsel.

■ While aspects of Fennell's representation trouble us, we cannot review Fennell's claims on the record before us. With two exceptions, claims of ineffective assistance of counsel require a fact-finding hearing, at which the district court can explore "whether alleged episodes of substandard representation reflect the trial counsel's 'informed tactical choice' or a 'decision undertaken out of ignorance of the relevant law.'" *United States v. Cyrus,* 890 F.2d 1245, 1247 (D.C.Cir.1989) (quoting *United States v. Brown,* 476 F.2d 933, 935 (D.C.Cir.1973)). One exception occurs when the trial record alone conclusively shows that the defendant

is entitled to no relief, *see, e.g., United States v. Wood,* 879 F.2d 927, 933–34 (D.C.Cir.1989), and we have also expressed a willingness to make a second rare exception when the trial record conclusively shows the contrary, as when it discloses counsel's "inexcusably inept examination of witnesses," *United States v. Pinkney,* 543 F.2d 908, 915 (D.C.Cir.1976), but this is not such a case. Each of Fennell's allegations concern decisions that, at least taken individually, could have involved a reasoned tactical choice, and so cannot be resolved without a hearing in district court.

 When an appellant has not raised a claim of ineffective assistance of counsel before the district court, either in a motion for a new trial, pursuant to Federal Rule of Criminal Procedure 33, or in a collateral attack, under 28 U.S.C. § 2255, our general practice is to remand the claim for an evidentiary hearing. *See Cyrus,* 890 F.2d at 1247; *United States v. DeCoster,* 487 F.2d 1197, 1201 (D.C.Cir.1973). Fennell, however, has already had one section 2255 proceeding, in which his appellate counsel alleged ineffective assistance of counsel on a single basis not argued here: that Fennell's trial counsel had failed to move for a judgment of acquittal at the close of the government's case. The district court rejected this argument when portions of the trial transcripts that had not been transcribed at the time Fennell filed his section 2255 motion were finally prepared and showed that Fennell's trial counsel in fact had moved for a judgment of acquittal.

Fennell's appellate counsel now seeks to excuse the omission from the section 2255 proceeding of the additional ineffective assistance claims Fennell now makes here, arguing that the then-existing transcript gave rise to a good-faith belief that the single claim raised before the district court would be dispositive. We have some sympathy for this argument, but we conclude that Fennell's counsel should have confirmed that the transcript was complete before resting an ineffective assistance claim exclusively on one ground. Moreover, the prudent course is always to raise all bases for an ineffective assistance claim in a single section 2255 proceeding. This is because a proper evaluation of an ineffective assistance claim often will require the collective consideration of a number of alleged deficiencies, no one of which in isolation may fall below an objective standard of reasonable representation or undermine confidence in the outcome, but which collectively may suggest both the absence of a tactical basis and the necessary prejudice required to establish ineffective assistance. *See Strickland v. Washington,* 466 U.S. 668, 687–96, 104 S.Ct. 2052, 2064–69, 80 L.Ed.2d 674 (1984); *United States v. Hammonds,* 425 F.2d 597, 604 (D.C.Cir.1970). Fennell should thus have presented all of his ineffective assistance claims to the district court in his first section 2255 proceeding. Because he did not, we deem them waived for purposes of this proceeding and will not remand. *See Cyrus,* 890 F.2d at 1247; *United States v. Debango,* 780 F.2d 81, 86 & n. 6 (D.C.Cir. 1986). Fennell, of course, retains the right to ask the district court, in its discretion, to permit him to bring a second section 2255 motion to hear these claims. *See* 28 U.S.C. § 2255 (1988).

## IV.

For the reasons discussed above, we reverse Fennell's conviction of possession of a firearm with an obliterated serial number, in violation of 18 U.S.C. § 922(k), and we remand for resentencing. In all other respects, we affirm the convictions and judgment below.

*So ordered.*

Before: WALD, SILBERMAN and TATEL, Circuit Judges.

## ORDER

July 17, 1995

Per Curiam.

Upon consideration of appellant's petition for rehearing, it is

ORDERED, by the Court, that consideration of the petition be deferred pending final disposition by the Supreme Court of *United States v. Bailey,* 36 F.3d 106 (D.C.Cir.1994) (*en banc*), *cert. granted,* —— U.S. ——, 115 S.Ct. 1689, 131 L.Ed.2d 554 (1995).

Appellant shall promptly notify this court of the aforesaid disposition.