UNITED STATES of America, Appellee,

v.

Billy RICHARDSON, Appellant.

No. 97–3030.

United States Court of Appeals,
District of Columbia Circuit.

Argued Nov. 5, 1998.

Decided Feb. 26, 1999.

Neal Goldfarb, appointed by the court, argued the cause and filed the briefs for appellant.

David B. Goodhand, Assistant U.S. Attorney, argued the cause for appellee. With him on the brief were Wilma A. Lewis, U.S. Attorney, John R. Fisher and Kenneth L. Wainstein, Assistant U.S. Attorneys. Elizabeth Trosman and Mary-Patrice Brown, Assistant U.S. Attorneys, entered appearances.

Before: WALD, RANDOLPH and TATEL, Circuit Judges.

Opinion for the Court filed by Circuit Judge TATEL.

TATEL, Circuit Judge:

Following a joint trial with two other defendants, a jury convicted appellant of armed robbery, assault with intent to murder, assault with a deadly weapon, and related crimes in connection with a restaurant robbery and a nightclub shooting. His codefendants were convicted of thirteen additional crimes, including murder. The jury hung on RICO and RICO conspiracy counts. Seeking reversal of his convictions, appellant argues that the RICO charges, together with his joint trial with codefendants charged with more serious crimes, resulted in the introduction of highly prejudicial evidence that would have been inadmissible in the absence of the RICO charges. Because we find that a reasonable jury, viewing the evidence in the light most favorable to the government, could have found that the government's evidence proved the elements of a RICO violation beyond a reasonable doubt, we reject his claims. We reverse one of appellant's two felon-in-possession convictions because, as the government concedes, there was no evidence that appellant possessed more than one gun or that he acquired or stored them separately. Finding appellant's remaining claims without merit, we affirm in all other respects.

I

A grand jury indicted appellant Billy Richardson and his codefendants Harold Cunningham and Percy Barron on RICO, RICO conspiracy, and other charges flowing from their alleged participation in an armed robbery ring. According to the indictment, their criminal activity consisted of fifteen separate incidents lasting from July 8 to October 17, 1993, the date on which the police apprehended the last of the defendants after a shoot-out. Their crime spree began with armed robbery of money and guns and escalated to shootings of robbery victims, bystanders, and rivals in crime. They killed five people. The indictment charged them with conducting their crimes as an informal criminal enterprise with Cunningham as its leader and primary decisionmaker.

The indictment identified Richardson as having participated in four of the fifteen predicate acts of the alleged enterprise. It formally charged him in connection with two. The first charged incident occurred outside the Ibex nightclub in the District of Columbia. Having left the club following an altercation with a member of a rival street crew, Richardson and his codefendants returned with guns and opened fire on people standing in a crowd outside the club. They wounded five. The second incident occurred a month later at Horace & Dickie's carry-out restaurant, also in the District of Columbia. Entering the restaurant, Richardson and his codefendants brandished handguns, emptied the cash register, and robbed the three employees. As the robbers fled, an employee followed to get the license plate number on their getaway car. One of the robbers—the employee could not identify which—fired at the employee but missed. The two uncharged incidents involved an armed robbery outside an Annapolis apartment complex and a shoot-out with a Maryland police officer.

The indictment charged Richardson with RICO, 18 U.S.C. § 1962(c) (1994), RICO conspiracy, *id.* § 1962(d), armed robbery, D.C. CODE §§ 22–2901, 22–3202 (1981), second degree burglary while armed, *id.* §§ 22–1801(b), 22–3202, assault with intent to murder while armed, *id.* § 22–503, assault with a dangerous weapon, *id.* § 22–502, possession of a firearm during a crime of violence, *id.* § 22–3204(b), felon in possession of a firearm, 18 U.S.C. § 922(g)(1), and use of a firearm during a crime of violence under the

Hobbs Act, *id.* § 924(c). His codefendants were charged with additional counts of armed robbery and assault and with five counts of murder.

Before trial, Richardson moved to sever his trial from that of his codefendants. He claimed that joint trial would be prejudicial because his codefendants were charged with more serious crimes. Denying this motion, the district court said, "[I]t certainly doesn't appear ... that the amount of evidence or the type of evidence is so disparate in terms of Mr. Richardson as opposed to the other two defendants that there would be compelling prejudice to his case." Tr. 11/20/95 a.m. at 105. At the close of the government's case and again at the close of all the evidence, Richardson moved to dismiss the two RICO charges for insufficient evidence. The district court denied the motions, finding that the government's evidence adequately supported the two RICO charges.

A jury convicted Richardson and his codefendants on virtually all predicate counts. It hung on the RICO and RICO conspiracy charges, as to which the district court declared a mistrial. Richardson then moved for a new trial on the other substantive counts. Claiming that the RICO charges were unsupported by the evidence, Richardson argued that the charges enabled the government to introduce unfairly prejudicial evidence, including the two uncharged Maryland crimes and his general association with the codefendants beyond the two charged incidents. Moreover, he argued, it was the RICO charges that made joint trial possible, and the joint trial caused "spillover" prejudice stemming from the codefendants' more serious crimes. The district court denied the motion.

We severed Richardson's appeal from his codefendants'. In *United States v. Cunningham,* we affirmed the codefendants' convictions except for the multiple felon-in-possession counts, which we found merged into one. 145 F.3d 1385 (D.C.Cir.1998). In this appeal, Richardson challenges the sufficiency of the evidence for the two RICO charges and argues that the district court erred in denying his motions for severance and to declare a mistrial on the substantive counts. He also claims ineffective assistance of counsel, arguing that his defense counsel failed to seek dismissal under the Speedy Trial Act; unconstitutional variance between the indictment and the evidence presented to support his convictions for assault with intent to murder while armed; merger of his convictions for armed robbery and assault with a dangerous weapon; and merger of his two felon-in-possession convictions. We consider each argument in turn.

## II

Richardson's primary argument centers on the district court's denial of his pretrial motion to sever and his post-trial motion for a new trial. In multi-defendant cases, Federal Rule of Criminal Procedure 8 authorizes joinder of defendants and charges if the charges arise from "transactions connected together or constituting part of a common scheme or plan," Fed. R. Crim. P. 8(a), and if the defendants are alleged to have participated in "the same series of acts or transactions constituting an offense or offenses," Fed. R. Crim. P. 8(b). Joint trials are favored in RICO cases. *Cf. United States v. Ford,* 870 F.2d 729, 731 (D.C.Cir. 1989) ("The joinder presumption is especially strong where ... the respective charges require presentation of much the same evidence, testimony of the same witnesses, and involve two defendants who are charged, *inter alia,* with participating in the same illegal acts.") (internal quotation omitted); *United States v. Girard,* 601 F.2d 69, 72 (2d Cir. 1979) ("Where ... the crime charged involves a common scheme or plan, a joint trial of the participants is proper, absent a clear showing of prejudice."). However, when improper joinder of charges allows the government to introduce prejudicial evidence that would have been inadmissible had the charges been tried separately, or when the prosecution joins defendants with significant disparities in the seriousness of their alleged crimes, we have recognized that there is a high risk of prejudice that might require reversal. *See United States v. Dockery,* 955 F.2d 50, 53 (D.C.Cir.1992); *United States v. Sampol,* 636 F.2d 621, 645–48 (D.C.Cir.1980); *see also United States v. Guiliano,* 644 F.2d

85, 89 (2d Cir.1981) ("One of the hazards of a RICO count is that when the Government is unable to sustain a conviction under this statute, it will have to face the claim that the prejudicial effect of tarring a defendant with the label of 'racketeer' tainted the conviction on an otherwise valid count.").

■ In this case, the RICO and RICO conspiracy counts functioned as the "connective tissue," as the district court put it, that allowed joinder of all fifteen incidents and all three defendants in a single trial. *United States v. Cunningham,* No. 95–88, at 23 (D.D.C. Jan. 18, 1996) ("District Court Order"). Reiterating the arguments that he made in district court, Richardson claims that the government failed to present sufficient evidence to support either RICO or RICO conspiracy and that his joint trial was unfairly prejudicial. Starting with his sufficiency of the evidence argument, we ask whether a reasonable trier of fact, viewing the evidence in the light most favorable to the government and drawing all reasonable inferences in the government's favor, could find the essential elements of the crime proved beyond a reasonable doubt. *See United States v. Dingle,* 114 F.3d 307, 310 (D.C.Cir.1997).

■ Richardson's sufficiency of the evidence argument focuses on two of the four elements of a RICO violation: the "existence of an enterprise" affecting interstate commerce and his participation in it through a "pattern of racketeering activity." *See United States v. Hoyle,* 122 F.3d 48, 50 (D.C.Cir. 1997) (the other two elements are that the defendant "associated with" the enterprise and "participated in the conduct of the enterprise's affairs"). As to the first element, a RICO enterprise may be "any union or group of individuals associated in fact although not a legal entity," 18 U.S.C. § 1961(4), so long as it involves "some structure, to distinguish an enterprise from a mere conspiracy." *United States v. Korando,* 29 F.3d 1114, 1117 (7th Cir.1994) (internal quotation omitted). Under the test we set out in *United States v. Perholtz,* the enterprise is established by (1) a common purpose among the participants, (2) organization, and (3) continuity. *See* 842 F.2d 343, 362 (D.C.Cir.1988).

■ Richardson does not claim that the government failed to prove a "common purpose" among the participants (the first *Perholtz* factor), and for good reason: As the district court observed, the government presented "undeniable" evidence that their common purpose was "to obtain money or other property by robbery." District Court Order at 5. Focusing instead on the second and third *Perholtz* factors, Richardson contends that the government presented only minimal evidence of "organization" and "continuity" beyond that necessary to commit the individual predicate crimes. We disagree.

To begin with, the evidence showed that Richardson and his codefendants organized themselves hierarchically and planned their activities. According to trial witnesses, Cunningham served as the leader: He was usually first through the door and first to display a firearm. He announced the robbery, gave orders to the victims, and directed Richardson and Barron during the course of the robberies. Additional evidence of organization and continuity comes from the robberies' consistent pattern; from testimony that Richardson and his codefendants borrowed or rented cars to commit their crimes and attempted to switch license plates to avoid detection; from ballistics analysis establishing that they used guns stolen in earlier crimes to facilitate later robberies and shootings; from testimony that they committed acts of violence and retaliation to protect their armed robbery enterprise; and from evidence that the three had social ties and were often seen together during the summer of 1993, thus further supporting the existence of an association independent of their individual crimes.

■ In his second challenge to the RICO charges, Richardson argues that the government failed to present evidence sufficient to prove that he engaged in a pattern of racketeering activity. He relies on *H.J. Inc. v. Northwestern Bell Telephone Co.,* which held that "[p]redicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this [pattern] requirement: Congress was concerned in RICO with long-term criminal conduct." 492

U.S. 229, 242, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989). Richardson argues that because the four predicate acts in which he participated spanned only thirty-four days, and the entire crime spree only three and one-half months, the evidence does not satisfy *H.J.*'s "long-term criminal conduct" requirement. The government counters that had Richardson and his codefendants not been arrested, their criminal enterprise would have continued indefinitely, thus "threatening ... future criminal conduct." *Id.*

We agree with the government. The "fortuitous interruption of [racketeering] activity such as by an arrest" does not grant defendants a free pass to evade RICO charges. *United States v. Busacca*, 936 F.2d 232, 238 (6th Cir.1991). As the district court observed, the sheer number of serious crimes, "which victimized dozens of persons and led to five deaths during the course of one summer, with no abatement of activity in sight," made the "threat of future criminality ... palpable." District Court Order at 17. We have no doubt that a jury could reasonably infer from the frequency and escalating seriousness of the defendants' crimes that their "past conduct ... by its nature project[ed] into the future with a threat of repetition," thus satisfying RICO's pattern requirement. *H.J. Inc.*, 492 U.S. at 241, 109 S.Ct. 2893.

Because we have found sufficient evidence of an ongoing RICO enterprise involving Richardson, Cunningham, and Barron to support their joint trial and joinder of offenses, we need not address Richardson's claim of prejudice. The district court did not err in denying Richardson's pretrial motion to sever or in refusing to declare a mistrial on Richardson's substantive convictions.

### III

Richardson's remaining arguments require little discussion. With one exception, they all fail.

■ Richardson first claims ineffective assistance of counsel based on trial counsel's failure to file a motion to dismiss under the Speedy Trial Act. Richardson's detention hearing occurred on April 27, 1995, but his trial did not begin until over a year later, on May 1, 1996. Accounting for speedy trial clock suspension for consideration of pretrial motions, Richardson argues that the delay violated the Act's seventy-day maximum by more than a month, requiring dismissal of the charges.

■ Because ineffective assistance claims usually require evidentiary hearings, we normally do not resolve such claims on direct appeal. *See United States v. Fennell*, 53 F.3d 1296, 1303 (D.C.Cir.1995). Although this rule has two exceptions—"when the trial record alone conclusively shows that the defendant is entitled to no relief" and "when the trial record conclusively shows the contrary," *id.* at 1303–04—we agree with the government that this case falls into neither. For one thing, nothing in the record conclusively shows that a Speedy Trial Act violation occurred; further factfinding would be necessary to determine the amount of time that the speedy trial clock should have been stopped for the district court to consider the multiple, complicated pretrial motions with "reasonable promptness." *United States v. Salerno*, 108 F.3d, 730, 737 (7th Cir.1997).

Even if the speedy trial clock did run out, moreover, the record suggests that counsel might well have had sound strategic reasons for not pursuing the violation. Asked by the district court whether he objected to the May 1996 trial date, trial counsel stated: "Given, from a lawyer's standpoint, what we're facing and what we're facing in terms of investigation, I obviously would tell him that I would feel as his representative, to put it mildly, uncomfortable in trying to try a case like this in 70 days, and that's putting it mildly." Tr. 5/22/95 a.m. at 22. Given the complexity of this case, involving fifteen different crimes, multiple defendants, and allegations of RICO and RICO conspiracy, we cannot assume that counsel's failure to pursue a Speedy Trial Act claim amounted to ineffective assistance. Under these circumstances, Richardson must pursue his claim under 28 U.S.C. § 2255 (1994).

■ Richardson next challenges his convictions for assault with intent to murder while armed flowing from the Ibex nightclub shooting, essentially contending that a vari-

ance between the indictment and the government's evidence at trial violated his right to be tried only on charges presented in an indictment returned by a grand jury. Richardson argues that because the government's evidence proved at most that he and his codefendants fired randomly into the crowd, it cannot support the indictment's charge that they assaulted each of six specifically named individuals "with intent to murder *him*" (emphasis added). Richardson relies on *Joseph v. United States*, 597 A.2d 14 (D.C.1991), in which the D.C. Court of Appeals found a violation of the Grand Jury Clause where the indictment charged "assault[ing] another with intent to kill him" ("direct intent"), but the government's evidence proved that the defendant actually intended to kill someone else ("transferred intent").

Had the government relied at trial on some theory of intent other than that accepted by the grand jury in the indictment, Richardson might well have a valid constitutional claim. *Cf. Stirone v. United States*, 361 U.S. 212, 217, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960) (alteration as to a material fact in the indictment "destroy[s] the defendant's substantial right to be tried only on charges presented in an indictment returned by a grand jury"). But unlike in *Joseph*, here there is no indication that the government switched theories of intent between the grand jury proceedings and the trial. Each relevant count of the indictment is titled simply, "Assault of [named person] with Intent To Murder While Armed." Each count refers to the relevant provision of the D.C.Code titled "Assault with Intent to Murder While Armed." Because appellant and his codefendants fired into a crowd of people at close range, we have no doubt that the grand jury, like the trial jury, understood the government's theory of intent to mean "intent to murder the persons in the crowd whom the bullets hit." We find nothing significant in the addition of the object "him" to the end of the phrase "assault[ ] . . . with intent to murder" in other parts of the indictment.

■■■ Next, relying on D.C. precedent that treats assault with a dangerous weapon as a lesser included offense of armed robbery, *see Norris v. United States*, 585 A.2d 1372 (D.C.

1991), Richardson argues that his conviction for assault with a dangerous weapon for aiding and abetting the shooting at the pursuing Horace & Dickie's employee merges with his conviction for armed robbery. According to Richardson, the charges merge because the restaurant robbery and the shooting were both parts of the same criminal act. Citing general principles of D.C. criminal law, Richardson argues that a robbery continues until the robber has completed the act of "asportation," i.e., carrying away the stolen property, and that asportation continues while the robber is being pursued immediately after the robbery. *See Carter v. United States*, 223 F.2d 332, 334 (D.C.Cir.1955).

■■■ To determine whether criminal acts are separate or part of the same crime, the D.C. Court of Appeals uses a "fork in the road" test. *Spain v. United States*, 665 A.2d 658, 660 (D.C.1995). Acts are separate where "there was an appreciable interval—albeit quite brief—between the two criminal episodes which showed that the defendant had reached a 'fork in the road' or had acted in response to a 'fresh impulse.'" *Id.* at 661. Robbery is particularly susceptible to "a series of individually chargeable acts," *Owens v. United States*, 497 A.2d 1086, 1096 (D.C. 1985), because the crime "tends to be completed quickly and to leave the perpetrator at a fork in the road where he must consider whether to retreat or to invade another interest," *id.* Where a "person not only robs but also assaults the victim after the robbery is completed, the assault will be treated as a separate offense." *Id.*

Applying these standards, we agree with the government that Richardson's convictions for armed robbery and assault with a deadly weapon do not merge. In *Heiligh v. United States*, the D.C. Court of Appeals found that defendants committed a fresh offense where, after making their robbery victims lie on the floor and then exiting the building, they threatened to shoot the victims who were following them. *See* 379 A.2d 689, 694 (D.C. 1977). Having robbed and fled Horace & Dickie's, Richardson and his codefendants had likewise passed a "fork in the road" when one of them fired at the pursuing employee.

In the alternative, Richardson argues that if the armed robbery and the assault are different crimes, then the evidence showing only that he aided and abetted the robbery cannot support his conviction for aiding and abetting the assault. This is a non sequitur. Inferring from Richardson's aiding and abetting the robbery that he aided and abetted the assault in no way conflicts with the notion that the two are separate crimes. In any event, evidence that Richardson was present at the time of the shooting, that he and his codefendants were armed, and that he acted in concert with them to flee the scene, supports an inference that Richardson could have foreseen that one of his cohorts would fire at the pursuing employee, and that he therefore aided and abetted that assault. *See United States v. Jones,* 517 F.2d 176, 181 (D.C.Cir.1975) (affirming defendant's convictions for armed robbery and assault with a deadly weapon on an aiding and abetting theory where four men robbed a bank and one shot a police officer upon exiting the bank).

Relying on *Cunningham,* where we found that Richardson's codefendants' multiple felon-in-possession convictions under 18 U.S.C. § 922(g) merged into one because the government presented no evidence that they possessed more than one gun or that they acquired or stored them separately, Richardson urges us to reverse one of his two felon-in-possession convictions for the same reason. *See* 145 F.3d at 1398–99. The government concedes that *Cunningham* controls. We accordingly vacate one of Richardson's felon-in-possession convictions and remand for resentencing.

We have considered Richardson's remaining arguments and find them without merit. With the exception of one of his felon-in-possession convictions, Richardson's convictions are affirmed.

*So ordered.*