UNITED STATES

v.

Anthony MEGALE et al.

No. CR. 3:04CR28(JBA).

United States District Court,
D. Connecticut.

April 4, 2005.

Joseph R. Corozzo, Jr., Rubinstein & Corozzo LLP, New York City, Stephan Erich Seeger, DeLeo & Seeger, Stamford, CT, Lindy R. Urso, Stamford, CT, for defendant.

Michael J. Gustafson, Raumond F. MIller, Kevin J. O'Connor, Karen L. Peck, U.S. Attorney's Office, New Haven, CT, for U.S.

### RULING ON MOTIONS TO SEVER, DISMISS AND STRIKE [DOCS. ## 170, 171, 178, 179, 180, 185, 186]

ARTERTON, District Judge.

Defendants are charged in a forty-six count second superseding indictment with Racketeering, Racketeering Conspiracy, Hobbs Act Extortion, Attempted Hobbs Act Extortion, and Illegal Gambling, in violation of 18 U.S.C. §§ 1962(c)-(d), 1951, and 1955. Currently before the Court are motions to dismiss Counts One and Two of the indictment filed by Defendants Nicola Melia [doc. # 171] and Athanasios Tsiropoulos [docs. ## 179, 186], joined by William Williams [doc. # 178]. Also pending are severance motions filed by Melia, Tsiropoulos, John Mascia [doc. # 185], and Ignazio Alogna [doc. # 170], joined by Joseph Mascia [doc. # 201]. Melia and Williams also have made a motion to strike surplusage from the indictment. Finally, Melia and Tsiropoulos make various discovery requests. For the reasons that follow, the motions to dismiss and sever will be denied, and the motion to strike will be granted in part as to the sentencing allegations and denied in part as to Racketeering Act 38. The discovery requests will be denied as moot.

## I. Background

The Second Superseding Indictment ("Indictment"), returned on September 15, 2004, is structured as follows. Count One alleges RICO violations against Anthony Megale, Victor Riccitelli, Gerard Grecco,[1] Nicola Melia, and Anthanasios Tsiropoulos. Megale is alleged to be the "underboss" of the Gambino Family of La Costra Nostra, "a clandestine criminal organization that engaged in various crimes, including murder, kidnaping, assault, extortion, loan sharking and illegal gambling in, among other places, the District of Connecticut." Second Superseding Indictment ¶¶ 3-4. Riccitelli is alleged to be a "'made' member, that is, a soldier, of the Gambino Family." Id. ¶ 6. Grecco, Melia, and Tsiropoulos are alleged to be associates of the Gambino Family. Id. ¶¶ 7-9. Predicate Racketeering Acts 1-35, corresponding to Counts 3-41, allege that Anthony Megale engaged in Hobbs Act extortion of two unnamed businessmen on various dates between November 11, 2002 and February 3, 2004. Counts 22, 23, 40 and 41 allege further acts of extortion of the same businessmen in March, 2004, but do not correspond to any Racketeering Acts.

Counts 42-44, corresponding to Racketeering Acts 36-38, allege substantive illegal gambling operations. Megale, Riccitelli and Grecco are charged with illegal video gambling and sports bookmaking in

---

[1]. Grecco entered a plea of guilty to Count Two of the second superseding indictment on March 28, 2005.

Counts 42 and 43. Count 44 alleges that these three defendants, along with William Williams, Melia and Tsiropoulos, who are not charged, ran an illegal numbers operation. Count 44/Racketeering Act 38 also charge the defendants with collection of unlawful debts from William Williams, Jr., and Leon Simmons.

Count Two alleges RICO conspiracy as to defendants Megale, Riccitelli, Grecco, Melia, and Tsiropoulos, and is predicated on all of the extortion and gambling charges (Racketeering Acts 1–38).

Count 45 charges attempted Hobbs Act extortion of Businessman # 1 by Defendants Ignazio Alogna, Joseph Mascia, John Mascia, Alfred Scivola,[2] and Henry Fellela.[3] Alogna is alleged to be a "Capo" in the Gambino Family, and the Mascias are alleged to be associates. Indictment ¶¶ 46–47.

Count 46 charges attempted Hobbs Act extortion of Businessman # 3 by Defendant Vincent Fiore,[4] who is alleged to be a "'made' member of the Gambino Family with the rank of soldier." Indictment ¶ 55.

The indictment concludes with "sentencing allegations," *id.* ¶¶ 58–61, concerning the roles of Megale, Riccitelli and Melia in the offenses charged in Counts One and Two, and the injury threatened and inflicted by Fiore as charged in Count 46.

## II. Motions to Dismiss Counts One and Two

Defendants Melia and Tsiropoulos move to dismiss Counts One and Two of the indictment, which charge them with RICO violations and RICO conspiracy by means of collecting an unlawful debt.

The applicable statute provides: "It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c). An "unlawful debt" is "a debt (A) incurred or contracted in gambling activity which was in violation of the law ... or which is unenforceable ... because of the laws relating to usury, and (B) which was incurred in connection with the business of gambling in violation of the law ... or the business or lending money or a thing of value at a rate usurious under State or Federal law, where the usurious rate is at least twice the enforceable rate." 18 U.S.C. § 1961(6). The statute thus "defines two separate categories of unlawful debts: one involving gambling activity and the other involving loansharking activity." *United States v. Giovanelli*, 945 F.2d 479, 491 (2d Cir.1991).

### A. Vertical Relatedness

■■■ "Unlike a 'pattern of racketeering activity' which requires proof of two or more predicate acts, to satisfy RICO's 'collection of unlawful debt' definition the government need only demonstrate a single collection." *Giovanelli*, 945 F.2d at 490. The government also must prove that the collection of the unlawful debt is connected to the enterprise, otherwise known as the requirement of "vertical relatedness." *United States v. Minicone*, 960 F.2d 1099, 1106 (2d Cir.1992), *cert. denied*, 503 U.S.

---

**2.** Defendant Scivola pleaded guilty on February 15, 2005 to attempted extortion in violation of 18 U.S.C. §§ 1951 and 2.

**3.** The Government has dismissed all charges against Fellela.

**4.** Defendant Fiore pleaded guilty on April 4, 2005, to Count 46, attempted extortion in violation of 18 U.S.C. §§ 1951 and 2.

950, 112 S.Ct. 1511, 117 L.Ed.2d 648 (1992).[5] "The requisite vertical nexus between the RICO enterprise and the predicate racketeering acts may be established by evidence that the defendant was enabled to commit the predicate offenses *solely* by virtue of his position in the enterprise or involvement in or control over the affairs of the enterprise, or that the predicate offenses are related to the activities of that enterprise." *Id.* (citing *United States v. Robilotto,* 828 F.2d 940, 947–48 (2d Cir. 1987), *cert. denied* 484 U.S. 1011, 108 S.Ct. 711, 98 L.Ed.2d 662 (1988)) (emphasis in original, internal quotation marks omitted).

■ Melia and Tsiropoulos argue that Counts One and Two against them should be dismissed because the government cannot prove a vertical relationship between the Gambino Family and the loan sharking charged in Racketeering Act 38. The first victim alleged in the indictment is William Williams, Jr.,[6] who was charged $100 per week in interest on a loan of $2,500. Indictment ¶ 30(a). The second victim is alleged to be Leon Simmons, who received "an extension of credit of approximately $7,000" at a rate of $280 per week in interest. *Id.* ¶ 30(b). While defendants argue that these allegations only show "a relationship between Melia and Tsiropolous," *see* Melia Mem. of Law [doc. # 172] at 11, their contention ignores the fact that three other defendants, including Megale, the alleged Gambino Family "underboss," Riccitelli, a "soldier," and Grecco, an "associate," are also charged with loan sharking activities directed at Williams. The Gov-

ernment contends that its evidence will show that Megale and Riccitelli personally instructed a cooperating witness to "satisfy the guarantee on the Williams loan" when Williams himself and the cooperating witness had refused to make timely interest payments. Gov't Mem. of Law [doc. # 198] at 5. The Government also will try to prove that defendants' debt collection was successful because of their positions within the Gambino Family organization. If so, such proof would satisfactorily connect the unlawful debt collection would be related to the charged RICO enterprise.

**B. Unlawfulness of Williams Loan**

■ Defendants argue that "there is a complete absence of proof to establish the terms of [the Williams] loan, or indeed any evidence whatever to show that it is an unlawful debt." Melia Mem. of Law. at 11. The indictment charges that Williams was loaned $2500 at a rate of $100 per week in interest. The maximum lawful rate of interest in Connecticut is 12% per year, Conn. Gen.Stat. § 37–4, or, divided over 52 weeks, 0.15% per week. The allowable interest on Williams' loan therefore would have been approximately $5.77 per week. The indictment therefore sufficiently charges that defendants collected an unlawful debt from Williams by demanding far in excess of twice the lawful rate of interest.

**C. Unlawfulness of Simmons Loan**

■ Defendants argue that the "government's evidence [regarding the Simmons

---

5. Although defendants contend that the government must also prove "horizontal relatedness," *i.e.* that the predicate racketeering acts are related to each other, *Minicone,* 960 F.2d at 1106, this concept necessarily applies only when the government charges a pattern of racketeering activity and therefore must prove at least two predicate racketeering acts. *See* 18 U.S.C. § 1961(5) (" 'pattern of racketeering activity' requires at least two acts of

racketeering activity..."). Where the government need only prove one collection of an unlawful debt, it would not be logical to require the government to prove that this single act is related to other predicate acts.

6. William Williams is also named as a defendant in Count 44, which relates to an illegal gambling business. Indictment ¶ 44.

loan] shows that the initial payback of the loan was to be by an offset against other moneys owed by Simmons to co-defendant Tsiropoulos." Melia Mem. of Law at 11. Citing *Giovanelli*, 945 F.2d at 490, defendants argue that such a transaction is an "intraorganization transfer of funds" that does not constitute collection of a debt.

Defendants in *Giovanelli* were convicted of several unlawful debt collections and argued that because they were " 'runners' in the gambling operation," they did not fall within the purview of the RICO statute. *Id.* The Second Circuit agreed with the general proposition that if the defendants "were only runners," their convictions would have to be set aside. However, because at least two of the runner defendants actually placed personal wagers with the defendants' gambling business, which debts were collected by the defendants, the convictions were affirmed.

The Government here contends that it will show that "Simmons borrowed money to purchase narcotics," which transaction was not an "intraorganization transfer of funds." Gov't Mem. of Law at 6. There is no allegation in the indictment concerning the purpose to which Simmons put the money, or whether he was borrowing the money for personal gain or simply transferring it for the defendants. Thus the evidentiary basis for this claim must await development at trial before it can be determined.

## III. Severance Motions

Defendants Melia, Tsiropoulos and Williams argue that Count 44 was improperly joined in the indictment and they also move, in the alternative, to sever Count 44 as prejudicial. Defendants Alogna and the Mascias similarly argue that Count 45 was improperly joined and move to sever that count.

### A. Joinder

Rule 8(b) provides that defendants may be indicted together "if they are alleged to have participated in the same act or transaction or in the same series of acts and transactions constituting an offense or offenses." Fed.R.Crim.P. 8(b). Whether defendants engaged in "the same series of acts and transactions" is an intensely fact-specific determination. *See, e.g., United States v. Blount*, 291 F.3d 201, 209 (2d Cir.2002). The Court must examine whether "the alleged acts are 'unified by some substantial identity of facts or participants, or arise out of a common plan or scheme.' " *United States v. Feyrer*, 333 F.3d 110, 114 (2d Cir.2003) (quoting *United States v. Attanasio*, 870 F.2d 809, 815 (2d Cir.1989)).

■ "There is a preference in the federal system for joint trials of defendants who are indicted together. Joint trials . . . promote efficiency and 'serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts.' " *Zafiro v. United States*, 506 U.S. 534, 537, 113 S.Ct. 933, 122 L.Ed.2d 317 (1993) (quoting *Richardson v. Marsh*, 481 U.S. 200, 209, 107 S.Ct. 1702, 95 L.Ed.2d 176 (1987)).

■ In particular, "[j]oint trials are favored in RICO cases" because RICO and RICO conspiracy counts often "function[ ] as the connective tissue . . . that allow[s] joinder of [separate] incidents and . . . defendants in a single trial." *United States v. Richardson*, 167 F.3d 621, 624–25 (D.C.Cir.1999); *United States v. Garcia*, 848 F.2d 1324, 1333 (2d Cir.1988), *rev'd on other grounds sum. nom. Gomez v. United States*, 490 U.S. 858, 109 S.Ct. 2237, 104 L.Ed.2d 923 (1989). Even when each defendant is not charged with the same predicate Racketeering Acts as all the others, joinder of all related counts is proper to prove "the existence and nature" of a

RICO enterprise and "a pattern of racketeering activity on the part of each RICO defendant by providing the requisite relationship and continuity of illegal activities." *United States v. Diaz,* 176 F.3d 52, 103 (2d Cir.1999).

■■■ Count 44 of the Second Superseding Indictment charges Defendants Megale, Riccitelli, Grecco, Melia, Tsiropoulos and Williams with engaging in an illegal gambling business, namely a "numbers operation." Indictment ¶ 44. Racketeering Act 38 alleges, using nearly identical language, that all of the above-named defendants engaged in an illegal numbers operation, but does not actually charge Melia, Tsiropoulos or Williams as defendants. Indictment ¶ 29. Thus although these three defendants are not charged with this particular Racketeering Act, the RICO and RICO conspiracy counts, which are supported in part by Racketeering Act 38, form the "connective tissue" permitting Count 44 to be joined in this case. *See Richardson,* 167 F.3d at 625. The illegal numbers operation is alleged to be a joint endeavor engaged in by all six defendants. There is a "substantial identity of facts or participants" between Count 44 and the other charges in the indictment, and joinder is proper. *United States v. Feyrer,* 333 F.3d at 114.

■■■ John Mascia argues that Count 45, alleging attempted Hobbs Act extortion of Businessman # 1, is not properly joined. Although Count 45 does not overlap with any charged racketeering acts, the Government asserts that the three defendants named in Count 45 accomplished the attempted extortion by virtue of their positions as a "capo" and "associates," respectively, of the Gambino Family. *See* Gov't Mem. of Law at 17 ("The government's claim at trial will be that these defendants approached Businessman # 1 and, as part of their attempt to extort 'protection' payments from him, relied on their standing within the family.") Moreover, the actual extortion of Businessman # 1 is alleged in Counts 1 and 3–23 and Racketeering Acts 1–19. Therefore there necessarily will be overlapping evidence on all of these counts. Such a factual nexus is sufficient for proper joinder.

## B. Severance

Federal Rules of Criminal Procedure 14 provides: "If the joinder of offenses or defendants in an indictment ... appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires." Fed.R.Crim.P. 14. Thus "Rule 14 recognizes that joinder, even when proper under Rule 8(b), may prejudice either a defendant or the Government." *Zafiro,* 506 U.S. at 538, 113 S.Ct. 933.

■■■ A "district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro,* 506 U.S. at 539, 113 S.Ct. 933; *see also United States v. Harwood,* 998 F.2d 91, 95 (2d Cir.1993). A defendant demanding a severance must show "prejudice so severe as to amount to a denial of a constitutionally fair trial or so severe that his conviction constituted a miscarriage of justice." *Blount,* 291 F.3d at 209 (internal citations and quotation marks omitted).

### 1. Evidence Concerning Gambino Family

■■■ Defendants Melia, Tsiropoulos and Williams argue that they will be prejudiced by participating in a trial where substantial evidence concerning the Gambino Family organization is introduced. They

contend that Count 44 alleges that they participated in the Gambino Family enterprise for "very limited purposes," including "making loans to two individuals and participating in a gambling business, unrelated to the enterprise." Tsiropoulos Mem. of Law at 13. Therefore, they argue, there is a danger that they will be prejudiced by evidence of other "violent or heinous offenses with which the enterprise is burdened." *Id.*

First, the Court has rejected these defendants' argument that the unlawful gambling and unlawful debt collection charged in Count 44 are unrelated to the enterprise. *Supra* §§ II.A, III.A. Second, the indictment does not charge the Gambino Family with acts of violence, only a background of violence. The other racketeering acts supporting Counts 1 and 2 are, like Count 44, crimes of extortion and illegal gambling. This case is therefore distinguishable from *United States v. Sampol*, 636 F.2d 621, 642–43 (D.C.Cir.1980), cited by defendants, where a defendant charged with making false statements to the grand jury and misprison of felony was jointly tried with others accused of murder and conspiracy to murder. There, the charges against the co-defendants "so exceeded and varied from that which was necessary or relevant to the charges against [the defendant] that it was unfair to him, and unrealistic to expect a jury not to be influenced by such extraneous testimony in its assessment of his guilt upon the lesser charges for which he was tried." *Id.* at 647. In contrast, there are no charges in this indictment involving crimes of violence or crimes that are particularly more "heinous" than those with which Melia, Tsiropoulos and Williams are charged.

Finally, to support Count 44 the Government intends to offer expert testimony concerning the Gambino Family and organized crime generally, in order to show that there were five or more participants involved in the alleged illegal gambling operation as required by 18 U.S.C. § 1955(c). Gov't Mem. of Law at 15. Therefore even if Count 44 were severed, evidence concerning the Gambino Family would be introduced even if defendants Melia, Tsiropoulos and Williams were tried separately.

■ Defendants Alogna and the Mascias similarly claim that since they are charged only in Count 45, and not in any of the predicate racketeering acts, much of the evidence concerning the Gambino Family would not relate to them at all. However, this argument ignores the allegations in the indictment that Alogna is a "made" member of the Family and that the Mascias are "associates." Indictment ¶¶ 46–47, 55. Although these defendants are not charged in the RICO counts, their connection to the Gambino Family is relevant to the attempted extortion charge in Count 45. As the Government states, the extortion "victim's level of fear was certainly informed by his belief that the threat was coming from members of an organized crime syndicate." Gov't Mem. of Law at 17. Because this evidence would be admissible against these defendants even in a separate trial, severance is not warranted. *See Diaz*, 176 F.3d at 103.

### B. Spillover Prejudice

Defendants argue that the nature and complexity of this trial will result in a "spillover" effect such that the jury will not be able to distinguish and evaluate the evidence separately against each defendant. "A defendant raising a claim of prejudicial spillover bears an extremely heavy burden." *United States v. Nerlinger*, 862 F.2d 967, 974 (2d Cir.1988). As discussed above, he must show "prejudice so severe as to amount to a denial of a constitutionally fair trial or so severe that

his conviction constituted a miscarriage of justice." *Blount*, 291 F.3d at 209 (internal citations and quotation marks omitted). Furthermore, a defendant also must show that a limiting instruction from the Court would be an insufficient remedy. *Diaz*, 176 F.3d at 103.

Defendants do not show that a "spillover" would lead to a miscarriage of justice in this case. All defendants here are alleged to be involved with the Gambino Family. The Government will try to prove at trial that even the non-RICO defendants benefitted from their Gambino associations in attempting to extort the victims. Thus there is substantial overlap in the evidence between the counts and defendants, and defendants will not likely be prejudiced by information that would not already have been admissible in a separate trial. *See United States v. Casamento*, 887 F.2d 1141, 1153 (2d Cir.1989) (rejecting spillover claim where "even if each defendant had been tried separately, much of the evidence the government presented at the joint trial regarding the activities of alleged co-conspirators would have been admissible in the single-defendant trials.").

This Court will instruct the jury "to assess the evidence against each defendant separately from the evidence presented against other defendants," *Diaz*, 176 F.3d at 103, and may give other limiting instructions as warranted during the trial. For example, defendant Alogna argues that some evidence against the RICO defendants will not be admissible as to him because he withdrew (or was instructed to leave) the conspiracy to extort Businessman # 1. Alogna Mem. of Law at 7. Alogna offers no reason to believe that the jury will be unable to follow an appropriate instruction relating to any limitation

placed on such evidence based on the date he claims he withdrew from the conspiracy. In fact, none of the defendants offers a specific reason why the jury will be unable to follow a limiting instruction in this case. Without such a showing, the Court must presume that the jury will follow its instructions, and the spillover prejudice argument must be rejected.

### 3. Length and Complexity of Trial

■ Finally, defendants argue that the number of defendants and counts will lead to an unduly long, burdensome and confusing trial, in violation of the standards articulated in *United States v. Casamento*, 887 F.2d 1141 (2d Cir.1989). *Casamento* involved a seventeen-month trial of twenty-one defendants accused of an international narcotics conspiracy. *Id.* at 1149. The Second Circuit found no prejudice to the defendants in that case, but noted its "misgivings about trials of this magnitude." *Id.* at 1151. While stating that joint trials have certain benefits, including promoting efficiency, minimizing the risk of inconsistent verdicts, and allowing witnesses to avoid the burden of successive trials, the *Casamento* Court set as "benchmarks" in complex criminal trials a maximum length of four months and a maximum size of ten defendants, unless the prosecutor can "make an especially compelling justification" for exceeding those limits. *Id.* at 1152.

Twelve defendants were indicted in this case, but after the Government dropped charges against Fellela, and after Grecco, Scivola and Fiore have pleaded guilty, only eight defendants will remain to be tried.[7] The Government estimates that its evidence will require thirty trial days, or approximately six weeks.[8] On both mea-

---

7. Additionally, Defendant Williams is scheduled to a enter plea of guilty on April 5.

8. Although defendants argue that the total trial could take much longer, it should be noted that *Casamento* focused only on "the

sures, therefore, this trial is far shorter and involves fewer defendants than the limits set in *Casamento*.

Furthermore, at this point in time it is not evident that there will be significant saving in time for the movants were they to try their cases separately. The Government intends to introduce evidence concerning the Gambino Family and organized crime generally against all defendants. While not all the evidence at a joint trial will pertain to all defendants, based upon the Government's brief and its representations at the February 9, 2005 status conference, it appears that there will be substantial overlap between the evidence offered against all defendants. Therefore separate trials may take longer, combined, than a single joint trial.[9]

Defendants argue that they will be burdened by the inconvenience and expense of a lengthy trial. These assertions ignore the burden on the Government's witnesses, some of whose identities will not be revealed until shortly before trial, in subjecting themselves to the time, effort and potential risk of multiple trials. They also ignore the finite resources of the Court. Judicial efficiency will not be served by granting the requested severances in this case.

## IV. Motions to Strike Surplusage

Defendants Melia, Tsiropoulos and Williams move to strike surplusage from the indictment, particularly the sentencing allegations in paragraphs 58–61 of the indictment and the mention of these three defendants as uncharged participants in

the illegal gambling enterprise alleged in Racketeering Act 38.

The Government does not object to striking the sentencing allegations after the Supreme Court's decision in *United States v. Booker*, —— U.S. ——, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005). Gov't Mem. of Law at 7. Therefore the motion will be granted as to these allegations.

■■■ Defendants argue that the mention of their names in Racketeering Act 38 (Indictment ¶ 29) is prejudicial because it will allow the jury to infer their involvement with uncharged crimes, and therefore that language should be struck. Melia Mem. of Law at 15. Federal Rules of Criminal Procedure 7(d) provides: "Upon the defendant's motion, the court may strike surplusage from the indictment or information." Under Second Circuit law, "[m]otions to strike surplusage from an indictment will be granted only where the challenged allegations are not relevant to the crime charged and are inflammatory and prejudicial." *United States v. Mulder*, 273 F.3d 91, 99 (2d Cir.2001) (quoting *United States v. Scarpa*, 913 F.2d 993, 1013 (2d Cir.1990)). Information in the indictment concerning "background evidence that [is] properly admissible and relevant" should not be struck. *Id.* at 100.

The illegal numbers operation alleged in Racketeering Act 38 is essentially identical to Count 44. Thus the same evidence will be admitted against these defendants even if their names are deleted from Racketeering Act 38, and defendants cannot show

---

time for presentation of the *prosecution's* case." 887 F.2d at 1152 (emphasis added).

9. Contrary to defendants' arguments, this does not appear to be a case where a marginal defendant will have to sit idly by throughout a lengthy trial, most of which does not concern him. Even if it were, the Second

Circuit "has repeatedly recognized that joint trials involving defendants who are only marginally involved alongside those heavily involved are constitutionally permissible." *United States v. Locascio*, 6 F.3d 924, 947 (2d Cir.1993).

they will be prejudiced. The motion also must be denied because it would be inconsistent and would risk confusing the jury to strike the names from Racketeering Act 38 when the factual allegations are the same as Count 44.

## V. Discovery Requests

Defendants' requests for *Brady* material concerning Henry Fellela and disclosure of other evidence were addressed at the February 9 status conference and in the Court's supplemental scheduling order of February 17, 2005 [doc. # 196]. Therefore these requests will be denied as moot, without prejudice to renew should a discovery dispute related to *Brady* materials arise.

## VI. Conclusion

For the reasons stated above, defendants' motions [docs. ## 170, 171, 178, 179, 180, 185, 186] are **GRANTED IN PART** as to the motion to strike paragraphs 58–61 from the Second Superseding Indictment, and **DENIED IN PART** as to the motions to sever Counts 44 and 45, the motions to dismiss Counts 1 and 2, and the motions to strike surplusage from Racketeering Act 38 in paragraph 29 of the Second Superseding Indictment. Defendants' discovery requests are **DENIED AS MOOT** without prejudice to renew should a discovery dispute arise.

IT IS SO ORDERED.